KATY M. BROWN, by her Guardian, etc., Respondent,
v. WESTERN UNION TELEGRAPH COMPANY,
APPELLANT.

Telegraph Company.—Negligence.—Proximate Damages.—The
plaintiff was injured at P.; her father at once telegraphed to
Ogden, 50 miles distant, for a physician. The telegram showed
the urgency of the case. It was received at Oden at 8 o'clock
in the evening. It was not delivered until 7:35 the next morn-
ing. Trains left Ogden for P. at 7 p. m. and at 11:30 p.m. Had
the telegram been delivered promptly the doctor could have left
Ogden at 11:30 p. m. and reached. P. at 2 a. m. The next morn-
ing the plaintiff was brought to Ogden, and amputation of the
finger was necessary; *held* that the damages were sufficiently
proximate to the defendant's negligence to support the verdict
for the plaintiff..

Id.—Id.—Regulation of Company.—Question for Jury.—The
The telegraph company had a regulation that telegrams received
after office hours, which were from 7:30 a. m to 8 p. m., should not
be delivered until the next morning. The Court in instructing the
jury submitted to them the reasonableness of such a regula-
tion; *held* that the reasonableness of such a regulation was a
question for the jury to determine.

Id.—Id.—Reasonable Diligence.—In a case where the message
shows the urgency of prompt action, the diligence of the tele-
graph company is in proportion to the exigency of the case, with-
out regard to rules which may be established by the company
for its own convenience.

Appeal from a judgment of the district court of the
First district, and from an order refusing a new trial.
The following was the message sent:

Form No. 2.

THE WESTERN UNION TELEGRAPH COMPANY.

All Messages taken by this Company are subject to the following
rules:

To guard against mistakes or delays, the sender of a
message should order it REPEATED; that is, telegraphed,
back to the originating office for comparison. For this,
one-half the regular rate is charged in addition. It is

agreed between the sender of the following message and this Company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same, nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other Company when necessary to reach its destination.

Correctness in the transmission of message to any point on the line of this Company can be INSURED by contract in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz.: one per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance. No employee of the Company is authorized to vary the foregoing.

No responsibility regarding messages attaches to this Company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers he acts for that purpose as the agent of the sender.

Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance, a charge will be made to cover the cost of such delivery.

This Company will not be liable for damages in any case where the claim is not presented in writing, within sixty days after sending the message.

THOS. T. ECKERT, Gen. Man.        NORVIN GREEN, PRES.

| Receiver's No. | Time Filed. 6:50 p. m. | Check. 10 Paid. |
|---|---|---|

Send the following message, subject to the above terms, which are hereby agreed to.

PROMONTORY, UTAH, April 8, 1888.
To J. R. Brown, Ogden:

Send doctor on first train; Katie has broken her
finger.                                        T. G. BROWN.

G 7.09 p. m.

Bu & D.

☞ Read the Notice and the Agreement at the Top. ☜ .

There were two counts in the complaint, one for dam-
ages for negligence, the other for statutory damages of
$100 for failure to transmit telegram in regular order.
The instructions asked by the defendant were as follows:

1. As to the first cause of action you are instructed
that the evidence is insufficient to justify a verdict in favor
of plaintiff, and your verdict should be for defendant.

2. You are instructed that there is no statute in Utah
making telegraph companies common carriers of tele-
graphic messages, and their rights and duties respecting
the receipt, transmission and delivery of such messages
are, in the absence of special contract, defined by common
law as announced by the decisions of the courts.    Follow-
ing the weight and number of the authorities, you are
instructed that a telegraph company is not a common
carrier of telegraphic messages, unless made so by statute;
they do not guarantee or insure the prompt transmission
or delivery of messages in the absence of statute and con-
tract, they are bound only to the exercise of ordinary care
and skill in the transmission and delivery of such mes-
sages, and are not responsible for mistakes or delays in
transmitting or delivering when they have used ordinary
care and skill.

3. With respect to the message in this case, you are
instructed that the defendant did not accept it, or under-
take to transmit or deliver it, as a common carrier; the
defendant did not guarantee or insure its prompt trans-
mission or delivery.    All the defendant undertook, by
receiving the message, was its transmission and delivery
within a reasonable time considering all the circumstances
which surrounded the defendant; the defendant assumed
only the duty of exercising ordinary care and diligence in

its transmission and delivery. What constituted ordinary care and diligence on the part of the defendant is for you to determine on all the evidence in the case, and in determining this question you should consider that the defendant has the right to establish reasonable office hours at the point of delivery, and that it is not bound to deliver telegrams, no matter how important they may be, out of such office hours.

4. If you find from the evidence that the operator at Promontory did not know or have notice of the office hours of the Ogden office, then he is not chargeable with notice, and you cannot presume that he did know the office hours of the Ogden office or that the delivery department at the Ogden office had closed for the day.

5. The operator at Promontory who received and sent the message was not chargeable with notice of and it is not to be presumed that he did know, the office hours of the Ogden office, or that the delivery department at the Ogden office had closed for the day, and there is not enough evidence to warrant you in finding that he did know the office hours of the Ogden office or that the delivery department there had closed for the day.

6. The operator at Promontory who received and sent the message was not chargeable with notice, and it is not to be presumed by you that he did know, the office hours of the Ogden office, or that the delivery department at the Ogden office had closed for the day.

7. It was not the duty of defendant to keep its employees at Promontory informed of the time the Ogden office closed for delivery. It is not the duty of the Western Union Telegraph Company to keep employees of every one of its offices in the United States informed of the time when every other office closes for the day. The immense number of these officers all over the United States, the frequent changes which must take place among them as to time of closing, make this onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers, and it cannot be held responsible in damages because of its failure to inform the Promontory operator of the closing hours of the Ogden delivery department.

There is no more obligation to do this in regard to offices in the same territory than in regard to those four thousand miles away, for the communication is between them all and of equal importance.

8. If you find that the proximate cause of the damage to plaintiff, if any she has sustained, was and is the accident to her hand, and not the failure of the defendant to deliver the message, then your verdict should be for defendant on the first cause of action.

9. If you find that the proximate cause of damage to plaintiff, if any she has sustained, was and is the accident to her hand, or was her failure to secure medical and surgical attendance by the two messages first sent, then your verdict should be for defendant on the first cause of action.

10. If you find that the failure to deliver the message before the next morning after its receipt, did not contribute to the injury to or damage sustained by defendant, or was not the proximate cause of the injury or damage, then your verdict should be for the defendant on the first cause of action.

11. You must not, in considering the first alleged cause of action, regard or take into consideration the evidence showing or tending to show delay or neglect on the part of the operator at Promontory in promptly transmitting the message; plaintiff sues for damages for alleged breach of contract, and charges and claimed the breach occurred at the Ogden office and not at Promontory office, and she is bound by that allegation and claim, and cannot introduce and you must not consider evidence to show a breach of contract alleged, at the Promontory office.

12. If you find from the evidence that any neglect of plaintiff in taking measures to secure the services of a physician or in any other respect, contributed materially to the alleged injury and damage, then your verdict should be for defendant.

13. If you find that the injury and damage sustained by the amputation was not the direct result of the failure of the doctor to arrive on the evening train, or if you find that if he had arrived on that train the amputation would

have nevertheless been necessary and performed, or if you find that the question whether amputation could be avoided had the doctor arrived is speculative or remote, then and in either event your verdict should be for defendant, on the first cause of action.

14. If from the evidence you find that the finger could not have been saved, had the doctor attended in response to the message, then your verdict should be for defendant.

15. In the first cause of action the plaintiff sues for damages for breach of contract; the contract is contained in the dispatch introduced in evidence before you; the printed terms and conditions at the head of said blank became and are part of the contract; that contract and the whole thereof, is binding on plaintiff, and has been expressly adopted and ratified by her not only in this action but also by presenting her claim against defendant, prior to bringing this suit, under and in accordance with the terms thereof; the contract contains the following clauses:

"All messages taken by this company are subject to the following terms : to guard against mistakes or delays, the sender of the message should order it repeated; this is, telegraphed back to the original office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays, in the transmission or delivery or for non-delivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same.

"Send the following message subject to the above terms, which are hereby agreed to."

This clause so far as it limits defendant's liability for delays in transmission or delivery of the message is reasonable, valid and binding on plaintiff, except as against unreasonable delay or neglect of defendant, and if you find there was no unreasonable delay or neglect of in the transmission or delivery of the message, and that plaintiff is entitled to recover, then all you can give plaintiff by your verdict is the sum charged and paid for sending the message.

The above instructions, except so far as they are given in the charge of the Court, were refused.

The Court gave the following charge to the jury:

This is an action brought by Katy M. Brown, the plaintiff, against the defendant, claiming damages for the non-delivery of a telegram. The complaint and answer have both been read in your hearing, and it is unnecessary for me to call your attention to them again in detail. The complaint, in effect, alleges that at a certain time the plaintiff was injured and suffering from an injury; that being desirous of obtaining the services of a physician from Ogden, through her father, her natural guardian, she delivered to the defendant a telegram to be transmitted to Ogden for the purpose of procuring a physician; and that in the transmission and delivery of that message there was a want of due care, or negligence, as it is called; and that therefore they are liable for such damages as she sustained by reason of the non-delivery of that message.

The plaintiff in this case is an infant and has appeared here by her guardian, or next friend, and prosecutes this case in her own behalf, so it is such damages as she has herself sustained that the action is brought for, and not the damage of the parents or guardians.

It is necessary, in the first place, to consider the obligation which this company was under to the plaintiff, and the relations between them. The plaintiff, being an infant and under the charge of her parents, her natural guardians, a telegram, under such circumstances, sent by them in her interest placed the defendant under a duty to her. It was as though she had sent the telegram, indeed, it was sent for and in her behalf, and it is for a violation of this duty that this action is brought, so it is necessary to consider what the duty is. And I call your attention to the telegram that the evidence shows was sent, in this case. It was written on an ordinary blank of the company and under certain rules and regulations and limitations of liability, and let me say, it is proper for the telegraph company or the Western Union Telegraph Company, to regulate its business by all reasonable and proper rules, and when these rules are brought to the attention of its patrons, and

they expressly subscribed to them and consent to them, then they are absolutely bound by them, and they become part of the contract itself, and so the duty that they owe to their patrons is to be considered with reference to these rules and regulations.

Calling attention to such rules and regulations as were brought to the attention of the plaintiff in this case, the first one that is stated here, which is in the heading of the telegram is, that "all messages taken by this company are subject to the following terms:" "To guard against risks or delays, the sender of this message should order it repeated, that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition." Now, gentlemen, that rule has no reference in this case. That is a rule of the company to make more certain the interpretation of message, to see that in the transmission and taking from the wire there shall be no material change in the language or words in the telegram. There is no complaint but what it was regularly done, so that part of the rules and regulations have no part in this. "It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery for any unrepeated message whether happening by negligence of the servants of the company or otherwise above the amount received for sending the same, nor for mistakes or delays in the transmission or delivery or non-delivery of a repeated message beyond fifty times the sum received for the same, unless especially insured, nor in any case from delays arising from unavoidable interruptions in the working of its lines, or for errors in cypher or obscure messages. And this company is hereby made the agent of the sender, without liability to forward any message over the lines of any other company when necessary to reach its destination." It is entirely competent for the telegraph company to provide that in case they cannot transmit the message that is received by them after the use of ordinary care, it is entirely proper for them to provide such rules, as that they shall only be liable to return the money received for transmitting the

the message, but it is wholly improper for them to contract with any person that they will not be liable for negligence. They are under the obligation to use due and ordinary care in transmitting messages and delivering them, and if they or their agents are guilty of negligence or of a want of due care it is wrong and they cannot provide against it, even by express agreement. So that so far as this rule undertakes to say that the company shall not be liable for negligence of its servants in transmitting this telegram, it would not be binding upon the plaintiff here at all. It was the duty, then, of the defendant to take this message and transmit it to Ogden and deliver it to the party that it was addressed to and in doing so, to use due and ordinary care.

This is the measure of their liability. They are not like the carrier of goods that takes the goods and contracts to take them and absolutely deliver them anyway, but they simply contract that they will undertake to use due and ordinary care in the transmission and delivery of the message to the party to whom it is directed, and for want of that ordinary care they are liable. In other words, they are liable for negligence which is a want of ordinary care according to the circumstances of the particular case. If this message, or any other be received by the telegraph company and their lines were down, and it was not known to them or there was some magnetic disturbance that prevented the working of the wires, or if the message was actually received and for some cause that did not involve negligence, it wasn't delivered, the telegraph company would not be liable, because their obligation in the first place was only to use due and ordinary care in transmitting and delivering the message to the party that it is. sent to.

Now, gentlemen, that is the question in the case for you to determine, whether the defendant in this case has been guilty of the want of care which it was their duty, as I have just stated, to exercise. And in determining that you are to take into consideration all the facts and circumstances of the case. You're to take into consideration the hours of the day, and the day of the week that this telegram was sent on, the hours of labor that is established at

the office where it was received, and the company has the right to regulate its business by all reasonable and proper rules and regulations, and if they are reasonable and proper and are observed, then the company is not liable if they live up to them.   But it is for you to determine whether any rule the company has established by its manager at Ogden is a reasonable and proper one, or not.   It is proper for you to take into consideration the hour at which this message was received at Ogden.   The distance from the office that the party to whom the message was directed lived; the difficulty of delivery; the business transacted at Ogden, the importance of the message, and determine, in the first place, have the company rules at this office; determine whether the rules as stated by several witnesses here are that no telegrams are delivered whatever after six o'clock on Sundays, or only important telegrams, and after you have determined the rule, then determine whether the rule is a reasonable and a fair rule, and if it was and was lived up to by the company in this case and was reasonable and fair, then the company would not be liable.   If on the other hand, this telegram was received and the agents of the company receiving it didn't exercise ordinary care, then the defendant is liable, they have violated an obligation and they are guilty of negligence in not delivering the telegram.   You can also take into consideration the evidence that the telegram bears on its face of its importance; what was necessary in relation to it; the number of men that were employed; the force about the office, all these things should be taken into consideration in determining whether the company is guilty of negligence, remembering all the time that the defendant is not liable beyond the amount received for the transmission of it unless it is shown by the plaintiff that the defendant was guilty of negligence, that is the want of due and ordinary care in transmitting the message.   That is the ground-work and the gist of this action, is negligence, at least, if you go beyond giving damages for the amount received for the transmission of the telegram.

The burden of proving this case is on the plaintiff; the burden to show negligence.   Negligence must be shown

affirmatively by the plaintiff. When negligence has once been shown; when they have established a case of negligence without some explanation of it, then the explanation is due from the defendant, for instance, if you find that this telegram was held by the agent of the company after it was received by them such a length of time that it was unreasonable, and is of itself evidence of negligence, in not delivering it, then that would be negligence and it would be for the company to explain and to show by their testimony that there was no negligence.

Now, gentlemen, if you should find that the defendant has violated its duty to the plaintiff; has been guilty of negligence; has not properly transmitted and delivered this message; and in doing so has not used ordinary care and reasonable diligence under the circumstances, then you will come to the question of damages, and the damages are such that you can trace reasonably and proximately to this injury. You must remember that the injury to the plaintiff's finger was not caused by the defendant in the first place; that at the time the message was sent, the injury had occurred; they are not charged with the direct injury to the finger, they are only charged here with negligence in delivering the telegraph message, so that she might have medical treatment.

You should determine in the first place, if the telegram, if delivered would have been effective in this way; whether it would have brought to her bedside a physician. If it would not, then there is no damage whatever, and the plaintiff must fail in this action, but if it would, then you must consider at what time it probably would have brought relief by bringing the physician to her, and then what injury has been occasioned by the delay simply, and nothing else; whether it is true that she lost her finger by that; whether if it had brought a physician to her bedside in response to this telegram her finger might have been saved; and you should find that certainly, definitely, distinctly before you charge this loss of the finger to the defendant, that is to say, in other words, you must find, before you can charge the defendant with the loss of this finger, that a physician would have been brought to her bedside by

the delivery of this telegram; and this finger would have been saved; and that it was the delay in delivering that telegram that caused her to lose her finger. You must take into consideration the testimony in this case, in the first place, as to how badly injured the finger was; the age of the patient, and the circumstances surrounding the case from the first to the last; medical testimony and all other testimony bearing upon it, and remember it is damages to the plaintiff herself, to the child and not to the parents, for the loss of her finger, and for whatever damages she may have suffered. If she did not lose the finger itself by the fact of the non-delivery, then for any other damages that was occasioned to her, which is the reasonable and necessary result of the non-delivery of this telegram, if so, the damages may be assessed against the defendant in this case. This is a matter for your judgment remembering, however, that such damages as you assess against the defendant you must be able to trace through this testimony with reasonable certainty to the injury complained of the non-delivery of this telegram.

In this action there was originally joined another cause of action from the one I have just instructed you in relation to, under the statutes, a statutory penalty of one hundred dollars, but that has been withdrawn, so you have nothing to do with that part of the case. It is not submitted to you in any way whatever. The only cause of action that is submitted to you is whether this company used reasonable diligence in delivering this telegram, and before you can find in favor of the plaintiff, you must find that the defendant or its agents has been guilty of negligence before you can find anything at least beyond twenty-five or thirty cents, the amount paid for the sending of the telegram.

You are the sole judges of the facts in this case, and of the credibility of the witnesses and of the weight of the testimony.

*Gentlemen*: I have sent for you because I have failed to state one principle to you that I think ought to be stated. It is a material one, and one that has been stated in all actions for negligence. You will remember that

I have instructed you about the negligence of the defendant, and that it must be found before you can find substantially for the plaintiff.

Now, in this connection, I want to say that the same rule applies to this case that does to all other actions for negligence. If you should find as a matter of fact that the plaintiff's own negligence in any way contributed to that injury; that substantial negligence on her part contributed to that injury; then she can not recover, and the plaintiff in this case being a minor, an infant, and in the possession and under the control of her parents who are natural guardians, she is responsible for whatever they did, so it results in this if her parents were guilty of contributory negligence that materially contributed this injury, then she can not recover; that is to say, you must take into consideration the duty that this plaintiff was under to herself, and the duty that her parents were under to her, and if they failed to do whatever they should have done under the circumstances to make good the loss, or procure attendance of a physician, if such was within their reach, then the plaintiff can not recover, and in determining that you should consider all the circumstances in the case; what they ought to have done under the circumstances, and see whether they have been guilty of negligence in the duty that they reasonably and fairly ought to have done; consider the time when the trains were coming this way; or where other physicians could have been got, and all those things, and if they failed to perform their duty; if they are guilty of a want of due care, then that would be a bar to the recovery in this case, because they would be guilty of contributory negligence, contributing to the injury, and they can not recover; but these are to be applied as matters of common sense under all the circumstances whether the parents ought to have undertaken to treat this wound; if so; how they ought to have treated it, if they did not, whether that was a want of due care, and whether that contributed to the injury, and if you find that they contributed by their own negligence by not trying to remedy this matter as soon as they could under the circumstances,

This is another thing I want to call your attention to.

There are rules of the company that they should make claim to the company within sixty days. This is a reasonable regulation, and companies can provide under such circumstances for their presenting the claim to them before they can be put to the expense of a law suit; but it is admitted here that they did make their application in this case, so that is not in the way in this case."

The foregoing were all the instructions given to the jury.

The remaining facts appear in the opinion.

*Messrs. Bennett & Bradley* for the appellant.

The court erred in refusing the instructions requested by defendant on the office-hours question, and did not in its charge give these instructions either as requested or with modification (Transcript, pp. 100, 101, 102). *Givins* v. *Tel Co.*, 24 Fed. Rep. 119 ; *W. U. Tel. Co.* v. *Harding*, 103 Ind., 505 ; Compiled Laws 1888, vol. 2, p. 284, par. 3362 ; *Illinois Central* v. *Whittemore*, 43 Ill., 420 ; *Vedder* v. *Fellows*, 20 N. Y., 126 ; *Oil Co.* v. *Van Etten*, 107 U. S., 325.

The second and third instructions requested by defendant are not given either as requested or with modification. These instructions are supported by the following among other authorities : *Grinnell* v. *Tel. Co.*, 113 Mass., 299 ; *Givins* v. *Tel. Co.*, 24 Fed. Rep., 119 ; *W. U. Tel. Co.* v. *Carew*, 15 Mich., 525 ; *W. U. Tel. Co.* v. *Harding*, 103 Ind. 505.

The court refused the fifteenth request, though supported by the following authorities : *Grinnell* v. *Tel. Co.* 113 Mass., 299 ; *Hart* v. *Tel. Co.*, 66 Cal., 579 ; *W. U. Tel. Co.* v. *Carew*, 15 Mich., 525 ; *Clement* v. *W. U. Tel. Co.*, 137 Mass., 463.

The charge states to the jury that the printed terms at the head of the message becomes part of the contract and binding on the patrons of defendant, "when they expressly subscribe to and consent to them." This is misleading to the jury, in that the jury might suppose the defendant in this case should have expressly consented to the printed

terms. 15 Gratt. (Va.), 230, (Vol. 13, U. S. Dig. 397, 4452.)
An express consent to these terms is not essential, it is not
necessary that they come or be brought to the attention of
plaintiff. *Young* v. *Tel. Co.*, 65 N. Y., 163 ; 63 Tex., 668
(1885 U. S. Dig., p. 629) ; *Kirkland* v. *Dinsmore*, 62 N.
Y., 171 ; *Kiley* v. *Tel. Co.*, 109 N. Y., 231.

*Mr. L. R. Rogers and Mr. Thomas Maloney* for the re-
spondent.

JUDD, J.:

This is an action brought by the plaintiff against the de-
fendant in the district court at Ogden City. The facts of
the case show that on the 8th of April, 1888, between 5 and
6 o'clock in the evening, the plaintiff, a girl about five years
old, had her hand badly mashed, and to such an extent
that her forefinger of the right hand was broken at the
middle joint. It seems that she, together with other chil-
dren, were engaged playing upon the turn-table of the rail-
road at a station called Promontory, in Box Elder county,
Utah Ter., about 50 miles north of Ogden City. That
when her father discovered her injury,—there being no
physician that could be reached nearer than Ogden City,
—he at once telegraphed to that city for a physician. To
this telegram he received an answer that the physician
could not come. Immediately upon the receipt of the
telegram from the physician he sent the following: "Prom-
ontory, April 8th, 1888. To J. R. Brown, Ogden, Utah.—
Send doctor on first train. Katy has broken her finger.
T. G. BROWN." This telegram was received by the agent
of the defendant at promontory, who was likewise the agent
of the railroad, at 6:30 o'clock, Promontory time,— 7:50
Ogden time. Trains left Ogden, going west, one at 7 P. M.,
and one at 11:30 at night. This dispatch was not delivered
by the company to Brown until about 7:35 A. M. the next
day. The testimony sufficiently shows that if the dispatch
had been delivered to Brown at Ogden, that he would have
procured a physician to go to Promontory, who would have
left on the 11:30 train, and arrived at Promontory at 2
o'clock. As it was no physician reached the plaintiff that

night, and the next morning her father took her upon the train, and arrived at Ogden at 10 o'clock on the morning of the 9th.    When the father arrived at Ogden he at once took her to the office of a physician and surgeon by the name of Bryant, who found, as he states, that the fore part of the finger, from where it was broken, was, to use his own language, "dead;" that by twisting the finger around, or by some other means not entirely described, the circulation had been strangled; and that he found it in such a condition that it was impossible to re-establish circulation, and that amputation was necessary, and he amputated it at the middle joint.    The action of the plaintiff against the defendant is founded upon the idea that if the dispatch sent to Brown had been delivered in proper time a physician would have arrived at Promontory at the hour of 2 o'clock that night after the accident, and that the finger by proper surgical treatment, could have been saved, and the plaintiff saved of much pain and suffering.    This theory of the case is put in issue by the defense and the ground taken is, *first*, that the proof does not show that the final amputation of the finger was the result of any delay in procuring a physician, and that it was probably the result of the accident which so badly damaged the finger; and that in any event amputation would have been necessary, and that the delay and negligence, if any, of the defendant, was not the proximate cause of the loss of the finger, and the pain and suffering; and therefore the defendant alleges that it is not liable; and for further defense it sets up that the manager of the defendant company in charge of the office in Ogden had established certain rules with reference to the delivery of dispatches from that office, and that those rules were reasonable, and that, all other questions aside, it is not liable.    It alleges and shows by the proof that, the day of the reception of this dispatch at Promontory and its transmission to Ogden City being Sunday, its office hours were from 8 to 10 o'clock A. M. and 4 to 6 P. M., and that on week-days from 7:30 A. M. to 8 P. M.    That this dispatch, being received at Ogden at 8 o'clock and 9 minutes, was more than two hours after the office hours established for this office, and, to use the language of the brief of the

counsel for the defendant, "these hours being reasonable, the company was not bound to deliver the dispatch received outside of the hours, no matter what the consequences may have been."

So far as the first point of the defense is concerned,—that is, "that the proof does not sufficiently show that the result to the plaintiff would have been different had the dispatch been delivered,"—this court is content to observe that all those matters were submitted fairly, and under proper instructions by the trial judge to the jury, and, the jury having found against the defendant, the rule of this court is that it will not disturb the verdict of a jury where the evidence tends to support it, and under that rule this case falls. But the more important question arises on the ground as to the right of the defendant to establish rules for its guidance in the delivery of telegrams. It will be remembered that this telegram was received at Promontory, and the money paid for its transmission to the Ogden office, and that it was transmitted in due time to the last-named office; and the only complaint, when the case is stripped of verbiage, is that the defendant company were guilty of negligence in failing to deliver this telegram when it reached Ogden City from that office to Brown, the person to whom it was sent; and the direct defense of the defendant is that it was received after its office hours, which it had the right to establish, and that therefore there was no negligence. In other words, the defendant says "that we have the right to establish hours for the transmission and delivery of dispatches, and we have the right to judge of the reasonableness of those hours, and that, so long as we are within the observance of the rules and hours which we have established, we are guilty of no negligence;" the argument being that the public is bound to take notice of the hours and rules that "we have established for business." Can this contention be sanctioned, is the important question which arises in this case. Whether, if a telegram were tendered the company to be sent by them out of their office hours, they would be bound to receive and send it, is a question with which the court is not now dealing, and upon which it expresses no opinion; but we

are of the opinion that, having received and transmitted this dispatch, the measure of diligence to be applied to the conduct of the defendant, with reference to its delivery, is not to be, and cannot be, decided by any rules or hours that the company may see fit to establish. Whether in the individual case the rules of the company are or are not reasonable, or whether it is or is not guilty of negligence in failing to deliver a message, is a question which the court will not allow the company to decide. It is a fundamental rule in the administration of remedial justice that courts claim and exercise for themselves the right to adjudge in each individual case as it may be presented the question of whether the parties sued are or are not guilty of wrong, with reference to the particular transactions under investigation. Whether the rules established by the defendant are reasonable or not, as we have said, is a question to be decided by the court or jury, as the case may be, in each invividual case as it arises. It will not do to say that, because the company has the right to establish rules for its government, therefore those rules determine the question of negligence or no negligence. It must be remembered that this defendant, in offering its services to the public, and receiving the money of people for sending dispatches from one point to another, is, to say the least of it, occupying the position of a public institution. In the language of Chief Justice WAITE, in the case of *Munn* v. *Illinois*, 94 U. S., 113: "When the owner of property devotes it to a use in which the public has an interest, he in effect grants to the public an interest in such use, and must to the extent of that interest submit to be controlled by the public for the common good, as long as he maintains the use." This defendant company, by its invitation to the public to use its lines for the transmission of messages, impliedly grants to the public an interest in the use of its wires, and, having done this, like all other institutions of like character, its rules and regulations are at all times open to inquiry as to their reasonableness, and its conduct is at all times open to inquiry, as to whether it is guilty of negligence or not. We are of the opinion that the question in this case of the reasonableness of these

rules of the company was properly submitted to the jury; and we are also of the opinion that the question of whether this company was guilty of negligence in failing to deliver the dispatch was properly submitted to the jury; and in the both instances the jury found against the defendant.

In order that there may be no misunderstanding as to the judgment of the court in the case, we lay down the following rule as applicable to the facts in the case: It will be observed that this dispatch was in plain, unambiguous language. It said: "Send doctor on first train. Katy has broken her finger." When that dispatch was received at Promontory for transmission, and when it was received at Ogden by the agents of the defendant, the supreme importance of prompt and active service upon the part of the defendant's agents in delivering that telegram was made manifest from its very reading, and we hold that the degree of diligence required of the defendant was equal in importance to the emergency of the occasion, and this without any regard to rules and hours established by the company, as testified to in this regard. It must be kept in mind that this company at Promontory, by its agent, received this dispatch, and received the money for its transmission, and that it was transmitted to the office at Ogden; that this dispatch was to the effect that a child was suffering with a broken finger; that it was important that a physician and surgeon be immediately sent; and to allow the defendant, upon the pretext that it was received out of its office hours, to let it lie there until 7:35 the next morning, and then to excuse it from delivery under such circumstances would be the greatest injustice. It would be to put the public at the mercy entirely, or we may say the caprice and will, of public institutions, to which they are compelled to resort in the transaction of business. So far as the receipt and delivery of telegrams with reference to commercial transactions are concerned, we do not express an opinion, but we do not hesitate to say that when a dispatch shown to be received by the company for transmission, which upon its face demonstrates the importance of delivery, as in this case, the degree of diligence is to be in proportion to the exigencies of that case. Nor has the de-

fendant the right to complain at this.   It sets itself up as a transmitter of messages for the public, and it receives franchises from the state, in order that it may do business; it receives money from the public for the transmission of messages, and, like all other institutions, it should be willing to deal with the public in a fair and just manner, and not undertake to screen itself beyond mere office rules and hours, which in all probability are made for the mere convenience of the employees; and especially in cases like this, where human pain, suffering and deformation hang upon prompt action.   Nor are these views new, but find ample authority in adjudged cases of high respectability. As a sample we cite the cases of *Telegraph Co.* v. *Broesche,* 10 S. W. Rep. 734, and *Telegraph Co.* v. *Sheffield,* Id. 752. Other cases could be cited, but the foregoing are sufficient. The case was fairly submitted by the court to the jury, under instructions in some respects more favorable to the defendant than the law warranted, and we are satified that substantial justice has been reached, and the judgment of the court below will be affirmed, with the costs.

ZANE, C. J., and ANDERSON, J., concurred.