## MANVILLE v. THE WESTERN UNION TELEGRAPH COMPANY.

1. **Telegraph companies:** LIABILITY: PRINTED RESTRICTIONS. While it is competent for a telegraph company to restrict by printed stipulations and conditions attached to the message its liability in cases where the message is not repeated, it will, notwithstanding, be liable for mistakes in transmission resulting from its own fault or negligence. Following *Sweatland* v. *The Ill. & Miss. Tel. Co.*, 27 Iowa, 433.

2. —— DELIVERY OF MESSAGE. A telegraph company is also liable for injuries resulting from negligence in the delivery of a message.

3. **Damages:** MEASURE OF. Where, in an action against a telegraph company for damages resulting from failure to deliver a message for four days, directing plaintiff to "ship his hogs at once," the measure of damages is the difference between the market value of the hogs on the day plaintiff was enabled to place them on the market after receiving the dispatch, and their value on the day he could, if there had been no delay in the delivery, have gotten them into market by the ordinary course of transportation.

*Appeal from Marshall District Court.*

THURSDAY, OCTOBER 9.

THE plaintiff alleges that on the 12th of October, 1871, he was a stock dealer, shipping hogs from Marshalltown, Iowa, to Chicago, Illinois, and had agents in Chicago, Kelley, Graber & Co., who were instructed to inform plaintiff of the state of the market, etc.; that on said 12th of October, plaintiff had

on hand at Marshalltown ready for shipment 180 head of fat hogs; that on that day said Kelley, Graber & Co. delivered to the defendant, at Chicago, to be sent to plaintiff the following message:

"W. S. YARDS, *October 12th*, 1871.

"*To* E. W. MANVILLE.

"Ship your hogs at once.

"KELLEY, GRABER & Co."

Which for reasonable reward defendant undertook to forward from Chicago in the forenoon of that day to plaintiff; that through the negligence of defendant said dispatch was sent to *S. Manville;* that the same was carelessly and negligently held and retained by defendant for four days before it was delivered to plaintiff; that by reason of such negligence plaintiff kept and fed said hogs *four days longer than he would have done* and spent large sums of money in the care and feeding of said hogs, and that the market depreciated so that he was compelled to sell his hogs at a less price than he could or would have obtained if defendant had delivered said dispatch sooner. He claims exemplary and actual damages and costs.

The answer of the defendant admits the receipt of the message to be sent to the plaintiff as alleged, but avers that it was received under a contract, duly entered into, under which defendant claims that it is not liable for any mistake or delay in its transmission; that the message was not repeated; that it was duly forwarded and would have been punctually delivered had it not been for the mistake occurring in its transmission — being, through such mistake, addressed to *S. Manville*, instead of E. W. Manville; that such mistake was without the fault or negligence of defendant, but was caused by some interruption of the lines by atmospheric electricity or some other unavoidable cause, and denying that defendant or its operators knew said message was for the plaintiff.

The contract referred to in the answer was printed on the message delivered to the operator at Chicago, and, with the message, is as follows:

## "THE WESTERN UNION TELEGRAPH COMPANY.

"*All messages taken by this company subject to the following terms :*

"To guard against mistakes, the sender of a message should order it REPEATED ; that is, telegraphed back to the originating office. For repeating, one-half the regular rate is charged in addition. And it is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED message beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery of any REPEATED message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of their lines or for errors in cypher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.

"Correctness in the transmission of messages to any point on the lines of this company, can be INSURED by contract in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz.: one per cent for any distance not exceeding 1,000 miles, and two per cent for any greater distance. No employee of the company is allowed to vary the foregoing.

"The company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message.

"GEO. H. MUMFORD, *Secretary.* WILLIAM ORTON, *President.*

"(ANSON STAGER, *General Superintendent, Chicago, Ill.*)

" CHICAGO, 10:39, *October* 13, 1871.
" *Send the following message subject to the above terms, which are agreed to.*

" To E. W. Manville, Marshalltown, Iowa :
" Ship your hogs at once.

"KELLEY, GRABER & Co."

Jury trial. Verdict and judgment for plaintiff.
Defendant appeals.

*Henderson, Merriman & Sutton* for the appellant.

*Brown, Wyllis & Williams* for the appellee.

MILLER, J. — I. Appellant's counsel insist that the verdict is contrary to the evidence. They claim that there was no evidence before the jury of negligence on the part of defendant, unless it is inferred from the mere fact of the mistake in the dispatch and the delay in its delivery to the plaintiff, which, they contend, is insufficient.

1. TELEGRAPH COMPANIES.

The testimony shows that the message was received at Marshalltown, Friday, the 13th of October, 1871 ; that the defendant kept a messenger boy to deliver messages ; that the message in this case was not placed in the hands of the messenger by the operator until Monday, the 16th of that month ; that the messenger found plaintiff and delivered the message to him on the same day it was handed to him by the operator, notwithstanding the mistake.

Now it may be conceded, as argued by appellant's counsel, that, if the message had been repeated, no mistake would have happened, and that under the special agreement printed on the message as sent by plaintiff's agents at Chicago, the defendants are not responsible for the mistake which did occur, and still the verdict be sustained by sufficient evidence. The question of negligence was one of fact for the determination of the jury, under all the circumstances disclosed by the evidence. They may have concluded that the retention of the message by the operator at Marshalltown, from Friday, the

13th, until Monday, the 16th, before placing it in the hands of his messenger for delivery, was, under all the circumstances, a want of ordinary and reasonable care; and we think that such conclusion would be reasonable in view of the evidence. The retention of the message, by the receiving operator, for three days before placing it in the hands of his messenger for delivery, might very reasonably be found to be negligence, for which the defendant may be held liable.

While the printed regulation in respect to the repetition of messages, in order to avoid mistakes, is a reasonable one, and will exempt the defendant from liability for mistakes, occurring in the transmission of messages, which are occasioned by uncontrollable causes, such as atmospheric electricity, yet it will be liable, notwithstanding this regulation, for the want of ordinary and reasonable care in the transmission or *delivery* of messages sent over its lines. *Sweatland* v. *Ill. and Miss. Tel. Co.*, 27 Iowa, 433. Notwithstanding this regulation or special agreement, it is still the duty of the defendant to employ skillful operators, use proper instruments, and, through its employees, to exercise ordinary and reasonable care in the transmission and delivery of messages. Ib. See also *N. Y. and Western Tel. Co.* v. *Dryberg*, 35 Penn. St. 298; *Parks* v. *Alta Cal. Tel. Co.*, 13 Cal. 422.

This neglect in the operator to place the dispatch in his messenger's hands for delivery does not seem to have been the result of the mistake in the address. There is no reason, upon the evidence, to infer that he would have done so any sooner if there had been no mistake. We may infer that the plaintiff would have obtained the dispatch on the 13th, when he called in person at the telegraph office and inquired for it, if it had been correctly addressed. But that this might have been so, does not excuse the negligence of the operator in respect to the delivery of the message; for it may reasonably be inferred that, since the messenger found the plaintiff and gave him the message on the same day he received it, the 16th, if the operator had given the dispatch to the messenger on the 13th, plaintiff would have received it the same day.

It is next urged that the action is not maintainable because the damages sought to be recovered are for profits depending upon market fluctuations and not recoverable in law.

3. DAMAGES.

It is sometimes said that speculative profits are not allowed as an element of damages. *Smith* v. *Coudry*, 1 How. 28; *Blanchard* v. *Ely*, 21 Wend. 342; *Benson* v. *Malden & Mel. G. L. Co.*, 6 Allen, 149.

But it is very clear that future profits are sometimes allowed by the law. The rule as laid down in *Griffin* v. *Colver*, 16 N. Y. 489, which is a leading American authority on the subject, is that " the party injured by a breach of contract is enti-tled to recover all his damages, including gains prevented, as well as losses sustained, provided they are certain, and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits, therefore, which the law excludes ; not such as being the immediate and necessary result of the breach of the contract, which may be fairly supposed to have entered into the contemplation of the parties when they made it, and are capable of being definitely ascertained by reference to the established market rates."

For a failure to deliver goods at a specified time and place, where the price is not to be paid until delivery, the measure of damages is the difference between the contract and the market price at the time and place of delivery. Where the price has been paid in advance of delivery the plaintiff may recover the highest market price between the day fixed for delivery and the time suit is brought, provided there is no un-reasonable delay in bringing the suit. *Canon* v. *Folsom*, 2 Iowa, 101, and cases there cited. See, also, *Davenport* v. *Wells*, 1 Iowa, 598, and same case in 3 id. 242. See, also, the follow-ing cases : *Shepard* v. *Milwaukee Gas-light Co.*, 15 Wis. 318; *Hinkley* v. *Beckwith*, 13 id. 31; *Story* v. *The N. Y. & Har-lem R. Co.*, 6 N. Y. 85 ; *Fox* v. *Harding*, 7 Cush. (Mass.) 516; *The Phil., Wil. & Balt. R. Co.* v. *Howard*, 13 How. 807; *Thompson* v. *Jackson*, 14 B. Monr. 114; *Cook* v. *Commis-*

*sioners of Hamilton Co.*, McLean's C. C. R. 612; *Hag* v. *Grouable*, 34 Penn. St. 9.

In these and like cases profits are recoverable, and recovered in all cases where the market value is greater than the contract price. The party failing to deliver the goods according to agreement has injured the other party, the measure of that injury, where the price has not been paid, is fixed by the law at the sum which the goods would have brought in market at the time and place of delivery less the contract price. The law deems it certain that if the goods had been delivered to the purchaser he could have sold them for the market value. This value is capable of being certainly ascertained with regard to all commodities having a fixed market price. The same rule, based upon the same principle, is applicable to this case. The market value of hogs in Chicago on any day was capable of being certainly ascertained. If defendant had had his hogs in Chicago three days sooner he could have sold them at the then market price. He was prevented from shipping his hogs sooner by the negligence of the defendant's agent. The difference, therefore, between the market value of the hogs on the day plaintiff could have put them on the market if the defendant had been guilty of no negligence in the delivery of the dispatch, and the market price when plaintiff was afterward able to put his hogs into the market, is the direct consequences of the neglect of defendant. This, too, is the measure of damages which may fairly be supposed to have entered into the contemplation of the parties at the time the message was delivered to defendant's operator at Chicago. The message was: "Ship your hogs at once." The obvious reason of this is evident on its face. It clearly imports that to meet a good market the hogs must be shipped at once and that by delay a good market will be lost. It is equivalent to saying, if you ship at once you will obtain gains on the purchase and sale of your hogs. If you delay these gains will be lost by the market price declining. It is most obvious, therefore, that the parties contemplated this very thing, and that it was clearly understood that negligence in the transmission or delivery of the

message to the plaintiff would prevent him from obtaining gains by a sale of his hogs in the market, as was intended. This was the object of the message and there could be no misunderstanding it. It was contemplated by the dispatch to enable the plaintiff to put his hogs into market and make gains thereby. The negligence of the defendant prevented him doing so. Plaintiff's loss by reason of this negligence is the direct, certain injury he has sustained and which was within the contemplation of the parties.

Affirmed.