---

A. M. GARRETT, Appellant, v. WESTERN UNION
TELEGRAPH COMPANY, Appellee.

| 83 | 257 |
|---|---|
| 90 | 135 |
| 83 | 257 |
| s92 | 451 |
| 83 | 257 |
| 102 | 222 |
| 83 | 257 |
| 106 | 538 |
| 83 | 257 |
| 131 | 375 |
| 83 | 257 |
| 144 | 619 |

1.   Telegraph Companies: NEGLIGENCE: CONTRACTS LIMITING LIA-BILITY: DAMAGES.   The failure of a telegraph company to send a night message delivered to it under an agreement that the sender would not claim damages for errors or delays, or for non-delivery of such message, happening from any cause, beyond a sum equal to ten times the sum paid for transmission, will, notwithstanding such agreement, render the telegraph company liable for the actual damage sustained.

2.   ———: ———: DAMAGES.   A cattle buyer on his way to Kansas City, Missouri, delivered to the defendant at Columbus Junction, Iowa, to be sent to his agents at Chicago, the following message: "Send me market Kansas City, to-morrow and next day."   It appeared that under the arrangement between the plaintiff and the agents to whom said message was addressed the said agents were not to answer if there was no change in the market since their last report, but if there was a change they were to answer by giving him the advance or decline.   The plaintiff, receiving no answer to his

telegram at Kansas City, bought a large number of cattle in the belief that there was no change in the market at Chicago, when in fact there was a decline in prices. *Held*, that it] should have been left to the jury to determine whether under all the facts and circumstances of the case the damages sustained by the plaintiff were such as the plaintiff might reasonably have apprehended would result from a failure to send the plaintiff's message.

3.     ———: ———: ———: PROXIMATE CAUSE. If the plaintiff in making his purchases at Kansas City acted upon the absence of any reply to said message, *held*, that the damages resulting from such purchase, through ignorance of the decline in prices at Chicago, were direct and not speculative.

4.     ———: ———: ———. It appeared that the Chicago market for cattle was posted on the bulletin boards of the stock exchange at Kansas City, and, that if the plaintiff had consulted these, he would have been advised of the decline in the market before he made his purchase. *Held*, that it was for the jury to determine, whether the plaintiff, as a reasonably prudent man, ought not to have relied upon his message to his agents at Chicago, under the arrangement above referred to.

*Appeal from Louisa District Court.*—HON. W. R. LEWIS, Judge.

WEDNESDAY, JUNE 3, 1891.

ACTION to recover damages for failure to transmit and deliver a telegraphic message. There was a trial by jury, and a verdict and judgment for the plaintiff for sixty cents. The plaintiff appeals.—*Reversed.*

*R. Caldwell* and *L. A. Riley,* for appellant.

*Arthur Springer,* for appellee.

ROTHROCK, J.—I.   The evidence in the case shows that the defendant is a resident of Louisa county, and

**1. TELEGRAPH companies: negligence: contracts limiting liability: damages.**

that at the time of the wrongs complained of by him, and for some time before that, he had been in the business of buying and shipping live-stock to the Chicago market. His operations were not confined to his immediate neighborhood, but he bought and shipped

on the Rock Island railroad, at points between Musca-
tine, Iowa, and Kansas City, Missouri, and including
those places.   On the evening of the twenty-eighth of
June, 1888, he left his home in the country, and went
to Columbus Junction, on the Chicago, Rock Island
& Pacific railway and took passage for Kansas City.
Before leaving Columbus Junction he wrote and deliv-
ered to the operator of the defendant at that station a
message, of which the following is a copy:

.  "June 28, 1888.
" *To Gregory, Cooley & Co., U. S. Yards, Chicago:*—
     "Send me market Kansas City, to-morrow and
next day.                    A. M. GARRETT."

When he delivered the message to the operator he
gave fifty cents in payment for its transmission.   The
plaintiff arrived in Kansas City about nine o'clock the
next morning,  and went to the stock yards for the
purpose of buying cattle.   He went to the telegraph
office in the stock-exchange building several times, gave
his name, and inquired for an answer to the message
which he had sent the night before.   He made these
inquiries until two o'clock in the afternoon, and he
then went into the stock yards and bought one hundred
and forty-seven cattle.   At the time of his purchase
the price of cattle in Chicago was fifty cents per
hundred less than it was on the day before the plaintiff
delivered the message to the defendant's agent at
Columbus Junction.   It appears in evidence that
Gregory, Cooley & Co., to whom the message was
addressed, was the commission firm which received,
handled and sold the shipments of cattle made by the
plaintiff, and had done so for several years; and the
evidence shows that there was a business arrangement
between the plaintiff and Gregory, Cooley & Co., by
which they were to keep him advised by telegraph of
the cattle market in Chicago.   This arrangement was
as follows:   If the plaintiff asked Gregory, Cooley

& Co. for the state of the market by telegraph, and there was no change from the last report, no answer to the telegram was received, and the plaintiff acted upon the last report. If there was a change, then Gregory, Cooley & Co. answered the telegram of the plaintiff, by giving him the advance or decline on the previous report. There is evidence tending to show that there was a report made by said commission firm to plaintiff on the twenty-seventh day of June, 1888, and that the plaintiff bought the cattle at Kansas City relying on that last report, and that, if his message had been sent, delivered and answered, he would not have made the purchase. The evidence tends quite strongly to show that the message was not sent from Columbus Junction, and that it was on a hook in the office, and that no attempt was made by the operator to transmit it to Gregory, Cooley & Co. It is true there is some conflict in the evidence on this question, but, as it was material to the rights of the parties, it was a proper question to be submitted to the jury. It is shown, without conflict, that the message was not at any time delivered to Gregory, Cooley & Co. There is evidence to the effect that the Chicago market for cattle was posted on the bulletin boards at the stock exchange in Kansas City, and that, if the plaintiff had consulted these reports, he would have been advised of the decline in the market before he made his purchase; and two of the members of the firm of Gregory, Cooley & Co. testified on the trial as witnesses that, if the plaintiff's message had been received by them, they would have immediately answered it, and advised the plaintiff of the decline in the market.

At the close of the introduction of the evidence, the court instructed the jury that, under the pleadings and the evidence, there could be no recovery by the plaintiff except for the sum paid by him for sending the message, and interest thereon at six per cent.

Under this instruction the jury returned a verdict for sixty cents. There is nothing in the record showing upon what ground the jury were instructed that the plaintiff could not recover damages. The message which the plaintiff delivered to the operator was what is known as a "night message." It was written upon a blank furnished by the defendant. There was printed matter on the blank, and, among other words thereon, there was the following:

"The Western Union Telegraph Company will receive messages to be sent, without repetition, during the night, for delivery not earlier than the morning of the next ensuing business day, at reduced rates; but in no case for less than twenty-five cents tolls for a single message, and upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such message, happening from any cause, beyond a sum equal to ten times the sum paid for transmission; and that no claim for damages shall be paid unless presented in writing within thirty days after sending the message."

Whatever right the defendant may have, if any, to limit its liability, or provide against the negligence of its agents in the transmission of messages, there can be no question that the language above quoted cannot be held to excuse the defendant for a failure to send the message, or to make the attempt to do so. The exemption provided for by the printed blank was for errors or delays, or non-delivery to the person to whom it was addressed, and not for a failure to make an attempt to send it. But suppose it be conceded that an attempt was made to send the message. The evidence shows without conflict that it was not at any time delivered, and the defendant fails to show that any effort was made to deliver it to Gregory, Cooley & Co. In this state of the evidence, the restriction as

to the liability of the defendant is no defense to the action, for the reason that the defendant cannot by contract limit its liability for the plain and palpable negligence of its operators and agents.  The defendant cannot contract against its own negligence.  This rule was announced by this court in *Sweatland v. Telegraph Co.*, 27 Iowa, 433; and we think it is now the settled law of this country.  ·*Telegraph Co. v. Griswold*, 37 Ohio St. 301; *Tyler v. Telegraph Co.*, 60 Ill. 421; *Wolf v. Telegraph Co.*, 62 Pa. St. 83; *United States Tel. Co. v. Gildersleve*, 29 Md. 232; *Ellis v. Telegraph Co.*, 13 Allen, 226; *Parks v. Telegraph Co.*, 13 Cal. 422; *Western Union Tel. Co. v. Fontaine*, 58 Ga. 433; *Hibbard v. Telegraph Co.*, 33 Wis. 558; *Manville v. Telegraph Co.*, 37 Iowa, 214.  These and a large number of other cases which might be cited sustain this doctrine.  It appears to us that the rule is eminently just.  The contrary doctrine would, in effect, enable telegraph companies to undertake the transmission of messages, and by the same contract exonerate themselves from all liability for failure to perform the service by reason of the carelessness or negligence of their agents' or operators in failing to attempt to perform the service.  It would be a marvelous doctrine to hold in this case that the defendant could fail to attempt to send the message as it contracted to do, and exonerate itself by paying back to the plaintiff the nominal sum it received for the service.  If its liability is to be measured by that standard, its contract is a sham and a deception.  It could perform or not perform, at its pleasure, and escape all liability for the consequences of non-performance.

II.  The next question arising on the record is whether the form of the message was such as that the

2. ——: ——:        defendant can be properly chargeable with
damages.        the alleged damages incurred by the plaintiff.  It has often been said that a party who fails to

perform a contract is liable for such damages as the parties to the contract may fairly and reasonably have apprehended would result from a breach. This does not mean that the parties to the contract contemplated the exact results. It is enough if it may fairly be found from the language of the contract, and the circumstances which were within the personal knowledge of the parties, that there might be serious consequences attending a breach of the contract. The message involved in this case did not apprise the defendant's agent at Columbus Junction, by its terms, that the plaintiff was on his way to Kansas City to purchase cattle, and that he would rely on the answer to the message in making his purchases. But it did, in effect, advise the agent that he was on his way to Kansas City, and that he desired market reports to be sent to him at that place. The evidence shows that the plaintiff had sent and received a great many messages from that office. We think it was, to say the least, a proper question to submit to the jury to determine whether, in view of all the facts and circumstances surrounding the parties, the defendant ought to be charged with knowledge that the plaintiff intended to act upon the result of his message in buying or selling cattle, and that it pertained to transactions which might involve loss; and, as it appeared that by the arrangement between the plaintiff and Gregory, Cooley & Co., that no answer to the message was equivalent to an answer that the market was unchanged, the question of substantial damages should have been submitted to the jury.

III. The next question properly to be considered is whether the plaintiff, if he acted upon the fact that he received no message as equivalent to an answer that the market was unchanged, was entitled to have the jury consider whether he was damaged in a substantial manner. In other words, were the damages he claims the direct

3. —: —: —: proximate cause.

result of the defendant's failure to perform its contract, or were they remote and speculative? In the case of *Western Union Tel. Co. v. Hall*, 124 U. S. 444; 8 Sup. Ct. Rep. 577, it appeared that Hall sent a message to his agent instructing him to buy for him ten thousand barrels of petroleum. Petroleum was at that time selling for one dollar and seventeen cents per barrel, and the evidence showed that the agent would have bought at that price; but the telegram was delayed through the negligence of the telegraph company, and the price had advanced to one dollar and thirty-five cents per barrel when the message was actually received by the agent, and he did not buy. It was held that Hall could not recover the difference in the price of the oil, because he suffered no actual loss, and was entitled to nominal damages only. But that was unlike the case at bar. Here the jury should have been directed to determine whether the plaintiff acted upon his advices from the commission men, or, rather, the absence of a message from them, and, if he so acted and made a purchase, his loss was direct and proximate, and not remote and speculative. In the cited case it is said: "Where the negligence of the telegraph company consists, not in delaying the transmission of a message, but in transmitting it erroneously, so as to mislead the party to whom it is addressed, and on the faith of which he acts in the purchase or sale of property, the actual losses, based upon charges of market value, are clearly within the rule for estimating damages." See, also, *Turner v. Telegraph Co.*, 41 Iowa, 458. Under this rule, if the defendant's agent at Columbus Junction did not transmit the message, and the plaintiff acted upon the fact that he received no reply thereto, he would be entitled to recover such damages as he sustained by purchasing the cattle in the belief that his message had been transmitted.

IV. It is urged in argument that the plaintiff should have protected himself by ascertaining the market value of cattle in Chicago before his purchase at Kansas City. This was a question for the jury. It was not a question of law to be determined by the court. If that feature of the case had been submitted to the jury, and it had been found that the plaintiff, as a reasonably prudent man, ought not to have acted upon the message which he sent to Gregory, Cooley & Co., and his arrangement with them in reference to their correspondence by telegraph, then there could be no recovery. But the court submitted no question to the jury, and, for the reasons above pointed out, we think such a disposition of the case should have been made. REVERSED.

4. —: —: —: —.