C. C. HERRON v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

| | |
|---|---|
| 90 | 129 |
| 93 | 754 |
| 90 | 129 |
| 102 | 222 |
| 90 | 129 |
| 106 | 538 |
| 90 | 129 |
| 135 | 78 |
| 90 | 129 |
| f144 | 617 |

Delay in Delivering Message. Plaintiff, his wife and partner registered at the only hotel in a town of six hundred people on March 25, and began selling a patent fence near the main street. A dispatch for him was, on April 1, given to a messenger who was well acquainted in said town, for delivery. The messenger testified that he vainly inquired for plaintiff at the hotel, a restaurant, and one of the depots. He returned the message as being unable to find addressee, and the agent sent a service message for a fuller address. On the other hand, there was evidence that the landlord referred the messenger to the register, which the messenger examined under the current date, only, that he spoke of addressee to the restaurateur as "belonging to the fence gang," and that he was referred to the hotel, and that he deliv-

ered a dispatch to plaintiff's partner that day, in plaintiff's presence. *Held,* that the question of negligence was for the jury, and that the sending of the service message did not absolve defendant. (1)

LIABILITY IN ABSENCE OF CONTRACTUAL RELATION. The owner of a telegraph line may be liable to an addressee for delay in the delivery of a message, though no contractual relation exist between them. Code, sections 1328, 1329. (2)

NOTICE OF IMPORTANCE OF MESSAGE. Where a dispatch contains an offer for adressee's horse and the receiving agent knows the horse and that the dispatch relates to trading for him and requires an answer, the company is charged with notice of the importance of the message. (3)

MEASURE OF DAMAGES. Where the sale of the horse, which had no regular market value in the neighborhood where kept, failed because of the delay, and he was sold later at the best price obtainable with reasonable effort, plaintiff may recover the difference between the price offered in the dispatch and that realized, with cost of keeping from offer to sale, and interest. (3).

REQUIREMENT TO PRESENT CLAIM WITHIN THIRTY DAYS: WHEN NOT OPERATIVE. A clause on the message blank that, claims for damage must be presented within thirty days does not govern, where plaintiff did not know, and could not reasonably ascertain within that time, what damage, if any, he had sustained by the failure of the sale offered him. (4)

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

WEDNESDAY, JANUARY 31, 1894.

ACTION to recover for damages alleged to have been caused by the negligence of defendant in not delivering in due time a telegraphic message. There was a trial by jury, and a verdict and judgment for plaintiff. The defendant appeals.—*Affirmed.*

*Cummins & Wright* for appellant.

*Casey & Stewart* for appellee.

ROBINSON, J.—On the thirty-first day of March, 1890, the plaintiff was the owner of a stallion named

"Mark," which was in the custody of his brother, George Herron, at Warren, in Lee county. The plaintiff was in the town of Clarksville, in Butler county, where he was engaged with one Wintrode in selling a fence machine. On that date one George Cassidy went to the place where the horse was kept, and made an offer for him to a brother of plaintiff, named B. B. Herron, and requested that he telegraph the offer to the plaintiff. Accordingly B. B. Herron went to the office of the defendant in Warren, and left to be sent to plaintiff a night message which read as follows:

"WARREN, March 31, 1890.

"*To C. C. Herron, Clarksville, Iowa:*

Have traded with George Cassidy for Mark, three horses, 1, 2, 3, two hundred balance, fifty dollars young cattle.                                B. B. HERRON."

There was evidence which tended to show that the offer of Cassidy was to be considered withdrawn on Wednesday, April 2, if not accepted on or before that day; that B. B. Herron had no authority to accept the offer or sell the horse; that he sent the dispatch as the agent of Cassidy; and that the agent of defendant at Warren knew that it related to a trade, and that an answer was expected the next day. The dispatch was received by the agent of defendant at Clarksville before 9 o'clock in the morning of April 1, and was at once given to a messenger to deliver. After an absence of several hours he returned it with the statement that he could not find the person to whom it was addressed. The agent then sent a service message to the office at Warren, stating that plaintiff was unknown in Clarksville, and asking for a better address. At noon of Wednesday he received an answer stating that plaintiff was a patent fence man, and would be found in town. At about the time that dispatch reached the agent at Clarksville, the plaintiff received a letter from B. B. Herron, telling of the trade, and asking why

the dispatch had not been answered. The plaintiff then went to the office, and sent a dispatch to his brother to do the best he could with Cassidy. While he was there, the dispatch of his brother was delivered to him. His dispatch was not delivered to his brother until Wednesday evening, and Cassidy was not seen until the next day, when he refused to take the horse. The plaintiff returned to Lee county in July, and took the horse to Nebraska, where he sold him for fifty dollars. He seeks to recover in this action the damages he claims to have sustained in consequence of the failure of defendant to deliver the message in time for him to accept the offer of Cassidy. The judgment was rendered for one hundred and seventy-seven dollars and sixty-five cents, the amount of the verdict, with interest and costs.

I. The appellant contends that the verdict was not authorized by the evidence, and insists that it exercised due diligence to deliver the message. We think there was sufficient evidence of negligence to support a verdict for the plaintiff. Clarksville is shown by the record to have been a town of about six hundred people in April, 1890. The plaintiff, with his wife and Wintrode, went to Clarksville on the twenty-fifth day of March, 1890, and stopped at the only hotel in the town, where he registered. A sample of the fence which the machine he was selling made was set up next to the principal business street, one block from the hotel, from which it could be seen. He and his companion were then engaged in exhibiting the fence to the public, and in trying to sell the machine, within the free delivery limits of the Clarksville office, during the last day of March and the first two days of April. Belden, the messenger of defendant, had lived in the town twenty-five years, was running a bus line, carried the mails and express, and was well acquainted with its people. There is some conflict in the evidence in regard to the effort he made to deliver the message. He claims to

have inquired of the landlord of the hotel where plaintiff stopped, at the restaurant, at one of the railway depots, and of a passenger on a train, without obtaining any information in regard to plaintiff. There is evidence, however, which tends to show that the landlord, in answer to his question, told him to look at the hotel register; that he did so, but looked only at the names under the latest date; that he had seen the plaintiff several times; that when he inquired at the restaurant he said plaintiff "belonged to the fence gang," and was told that he was at the hotel; and that he delivered a dispatch to Wintrode on the first day of April, in the presence of plaintiff. It is evident that if the messenger had used ordinary diligence in his search he would have found the plaintiff, and his negligence is that of the defendant.

The sending of the service message did not relieve it of responsibility, for the reason that the address of the plaintiff as given in the dispatch to him was all that was necessary to enable the defendant to find him readily. It is said that B. B. Herron knew that the defendant had not found his brother, and could have given it the required information, so that his brother would have been found, and a message accepting Cassidy's offer received, in sufficient time to have effected the sale, but that he negligently withheld the information. If that be conceded to be true, it does not follow that his negligence was that of the plaintiff, for the reason that he appears to have been the agent of Cassidy for the purpose of sending the dispatch.

II. It is said that if the dispatch was sent by B. B. Herron as the agent of Cassidy, then, so far as it related to plaintiff, the act in sending it was purely voluntary, and conferred upon him no right of action on account of negligence in sending it. The Code provides as follows: "1328. Any person employed in transmitting messages by telegraph, must do so with-

out unreasonable delay, and anyone who willfully fails thus to transmit them, or who intentionally transmits a message erroneously, or makes known the contents of any message sent or received to any person except him to whom it is addressed, or to his agent or attorney, is guilty of a misdemeanor." "1329. The proprietor of a telegraph is liable for all mistakes in transmitting messages made by any person in his employment, and for all damages resulting from a failure to perform any other duties required by law." The defendant violated the provisions of section 1328, in not transmitting the message to plaintiff without unreasonable delay, and thereby became liable, under section 1329, for all damages which resulted from that failure. There were no contractual relations between it and the plaintiff, and some authorities hold that, in such cases, the person injured can not recover; but the rule which seems to prevail most generally in this country is to allow the person to whom a dispatch is sent, even though sent by a person under no obligation to send it, to recover of the telegraph company damages caused by delay in the transmission. *Telegraph Co. v. Du Bois*, 21 N. E. Rep. (Ill. Sup.), 5; 3 Suth. Dam. 314; 2 Shear. and R. Neg. section 543; Whart. Neg. section 757; Gray, Com. Tel. section 65; *Wadsworth v. Telegraph Co.* 86 Tenn. 711, 8 S. W. Rep. 574; *Telegraph Co. v. Adams*, 12 S. W. Rep. (Tex. Sup.) 875. There can be no doubt, under these authorities and the sections of the Code quoted, that the right of plaintiff to recover does not depend upon a contract made by or for him.

III.    The court charged the jury that, if plaintiff was entitled to recover, the measure of damages would be the difference between the price he would have received from Cassidy and the price he afterward obtained for the horse, and the reasonable value of the care and keeping of the horse, with six per cent. interest from the time the horse was sold. The appellant

contends that the measure of damage given by the charge was erroneous. The blank on which the message sent was written  stated that errors and delays might be prevented by repetition, for which an extra price would be charged, but that defendant would receive night messages, to be sent without repetition, at a reduced rate, "and upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of, such message, happening from any cause, beyond a sum equal to ten times the amount paid for transmission." We do not understand the appellant to claim that the appellant is bound by the provisions quoted, but it contends that it had no knowledge of the transaction out of which the message grew; that the message did not disclose the interests which were dependent upon it; and that defendant should not be charged with any liability which it can not be reasonably said would be an ordinary and natural result of a failure to transmit the message within a reasonable time, and therefore contemplated by the parties when the defendant undertook to send the message. The evidence shows that the agent of defendant at Warren knew of the horse when the message was given him to send, that it related to a pending trade, and that an answer was expected. Knowledge of these facts was sufficient to authorize the jury to find that defendant should be charged with knowledge of the importance of the message when it was received. *Garrett v. Telegraph Co.*, 83 Iowa, 262, 49 N. W. Rep. 88.

It is claimed that, if defendant is liable to plaintiff for all the damages he sustained by reason of the delay in transmitting the message, the measure of that damage is the difference between the market value of the horse and the price which Cassidy would have paid for him, had his offer been accepted. That would probably have been true, had there been a market value for the

horse, but the evidence shows that there was not. He was an inferior animal, and valuable only for breeding purposes. There was no market for that kind of horses in Lee county and vicinity. George Herron, who had charge of the one in question, made diligent effort to sell him after the thirty-first day of March until he was taken to Nebraska, but without success. The plaintiff also personally made every effort possible to effect a sale, and finally took the horse to Nebraska, and traded him for land, receiving for him fifty dollars in value. It is not true, as a general rule of law, that in such cases as this, the plaintiff would be entitled to recover the difference between the price he would have received, had he been able to accept the offer, and the price he actually received; but it appears that the plaintiff in fact sold the horse for all which could have been realized for him with reasonable effort to secure the best price attainable. The value of the property Cassidy offered for the horse was two hundred and fifty dollars; hence plaintiff sold him for two hundred dollars less than the amount of Cassidy's offer. It was necessary for plaintiff to pay the expense of keeping the horse from the second day of April until he was sold, and the evidence sustains the allowance, if any, made by the jury for that purpose. The loss in price, the expense of keeping the horse, and interest, represented actual damages which the plaintiff sustained by not accepting the offer of Cassidy; and it is the policy of the law to permit a person injured by the wrong of another to recover the amount of his loss. Where the loss results from a failure to sell property for which there is no market value, its actual value may be ascertained by means of the best evidence of which the case admits. 3 Suth. Dam. section 476; 1 Sedg. Dam. section 250; Wood, Wayne, Dam. section 22; *White v. Cattle Co.*, 12 S. W. Rep. (Tex. Sup.) 867. We conclude that the measure of damages adopted by the court, as applied to the

facts in this case, was not erroneous. The jury were authorized to find that Cassidy would have taken the horse according to his offer had it been accepted, and the verdict is sustained by the evidence.

IV. The blank on which the message was written by B. B. Herron contained the following provision: "No claim for damages shall be valid, unless presented in writing within thirty days after sending the message." The court charged the jury as follows: "If you find from the evidence that the sender of the message was the agent of and acting for the plaintiff in transmitting the message, then it would be binding upon him, unless the plaintiff has shown by evidence that the claim he makes for damages against defendant had not matured, if so, and could not reasonably have been ascertained within thirty days after the message had been sent, if such was the case." We think that portion of the charge is substantially correct, as applied to the facts in this case. The evidence authorized the jury to find that the plaintiff did not know, and could not with reasonable diligence have ascertained within thirty days of the sending of the message, what amount of damage, if any, he had sustained in consequence of defendant's negligence. The blank required that claims for damages, not notice of claim, to be valid, must be presented within the time stated. A limitation in the agreement for sending the message, which, in its practical effect, would deprive the sender of the message of all redress for injury caused by the wrong of the defendant, would be unreasonable, and to that extent, at least, must be deemed inoperative.

V. The conclusions announced dispose of all material questions presented for our determination. We find no sufficient ground for disturbing the judgment of the district court, and it is, therefore, AFFIRMED.