Evans & McCloud v. The Western Union Tele-
graph Company, Appellant.

Non-Delivery of Telegram: DAMAGES. Where a telegraph company had no knowledge of an agreement that a car of horses was to be shipped to San Antonio, in the absence of instructions to the contrary, its failure to deliver a message directing the car to be shipped to Little Rock did not render it liable for the damages resulting from the car being sent to the former place.

SAME. The car having been sent to San Antonio pursuant to the previous arrangement, and not because sale at Little Rock was lost by the company's negligence, the question of plaintiff's diligence in sending the horses to San Antonio for sale is not involved.

MEASURE. The loss of profits from a sale of horses resulting from the failure of a telegraph company to deliver a telegram directing the shipment of the horses to a specified place, is properly allowed to the owner, as damages naturally resulting from the breach of the contract.

NOTICE. A message directing horses to be shipped to a named point was sufficient notice to the telegraph company of damage which might result from failure to deliver it.

EVIDENCE. A statement by a telegraph agent to the sender of a telegram, on calling for an answer, that the message had not been sent is admissible against the company in an action for failure to deliver the telegram.

*Appeal from Taylor District Court.*—HON. W. H. TEDFORD, Judge.

SATURDAY, MAY 15, 1897.

J. A. Evans and Carr McCloud compose the firm of Evans & McCloud, and were engaged in the business of buying, selling, and shipping horses at Bedford, Iowa. In December, 1893, McCloud, while passing through Little Rock, Ark., to Magnolia, of that state, with a car load of horses, entered into an oral agreement with one Thaltheimer to deliver him another

car load as good or better as that he then had, on Thursday following, at a certain price per horse. The firm had nearly another car load at Bedford and, before McCloud left, had an understanding that Evans should ship these, with a certain pacer, to San Antonio, Texas, on Monday following unless he heard from McCloud. The latter handed the defendant's agent at Magnolia, Ark., the following telegram, on Saturday, with the required fee for its transmission: "December 16, 1893. To J. A. Evans, Bedford, Iowa: Ship horses Monday. Bill by way of Little Rock. Keep out Jim Cloud. C. S. McCloud." The message was never sent, and the horses were shipped to San Antonio. This action is brought to recover damages occasioned by failure to transmit the message. Trial to jury; verdict and judgment for plaintiffs, and defendant appeals.—*Reversed.*

*Smith McPherson* and *Sullivan & Sullivan* for appellant.

*J. B. Dunn* and *Flick & Johnston* for appellees.

LADD, J.—The defendant should be compelled to make good any damages sustained by the breach of the contract to deliver the message, which were contemplated or might reasonably have entered into the contemplation of the parties at the time it was received, with the fee for its transmission. Special circumstances, unless made known, cannot affect the measure of damages; but, when made known at the time the contract is entered into, the damages will be such as naturally result from its breach under such circumstances. 1 Sedgwick, Dam., 122; 3 Sutherland, Dam., section 961. The fact that plaintiffs had arranged to ship the car load of horses from Bedford, Iowa, to San Antonio, Texas, in event

Evans did not hear from McCloud by the Monday following, was not communicated to the company or its agent, and it could not be expected to have had that in contemplation in receiving it. San Antonio, as a horse market, does not control the prices at Bedford; and the defendant could no more have anticipated a shipment of the horses there than to any other distant place, in event of failure to deliver the message. The damages occasioned thereby are not such as would ordinarily follow from such a failure. Only those which flow directly and naturally from the breach of the contract can be allowed. The district court received evidence of the shipment to San Antonio, the freight and expense connected therewith, and the price there received for the horses. No evidence was introduced tending to show the market value at Bedford or in Little Rock. This instruction on the measure of damages was given: "If you find for the plaintiffs, you will first allow them the difference in price for which said horses were contracted, if they were, and the price actually obtained after their reasonable diligence to obtain a sale for the horses. In addition to this, plaintiffs may further recover for the difference in freight, if you find that it was reasonable care to ship to San Antonio. Also you will allow any other natural expenses made necessary, such as extra feed, stable rent, and extra car fare, if you find that the trip to San Antonio was the reasonable thing to do." We do not think the question of diligence is involved in this case. The horses were shipped to San Antonio in pursuance of a previous arrangement of the parties, and not for the purpose of disposing of property the sale of which had been lost by reason of the negligence of the defendant. If the plaintiffs suffered no damages by reason of the shipment to San Antonio instead of Little Rock, then, of course, no injury resulted from a

failure to transmit the message. As a rule, horses have a market value, and, if a person is deprived of a sale by the negligence of the telegraph company, his measure of damages is the difference between the market value and the price agreed upon. There was evidence tending to show that McCloud, acting for plaintiffs, made the sale of a car load of horses to Thaltheimer, of .Little Rock, to be there delivered on a day certain; that McCloud gave a message to defendant's agent at Magnolia, to be sent to his partner, Evans, at Bedford, Iowa, telling him to ship the horses from there to Little Rock on Monday; that the message was never sent, and that failure to forward the message rendered it impossible to comply with the terms of the contract with Thaltheimer. If the sale had been completed, the profits, if any, accruing to the plaintiffs, would have been the difference between the reasonable cost or market value of the horses at Bedford, Iowa, and the price Thaltheimer was to pay, less freight and other costs incident to their shipment. The loss of such profits might reasonably have been contemplated by the parties, and constitute the damages naturally resulting from the breach of the contract, and we think recovery should be limited to such amount. See *Herron v. Telegraph Co.*, 90 Iowa, 129 (57 N. W. Rep. 696).

II. The message fairly apprised the company of the consequences likely to follow its non-delivery. The details of the transaction need not be disclosed, nor the particular business intended. It is sufficient if the results likely to follow negligence in transmitting may be gathered, in a general way, from the wording of the telegram. *Manville v. Telegraph Co.*, 37 Iowa, 214; *Harkness v. Telegraph Co.*, 73 Iowa, 190 (34 N. W. Rep. 811); *Garrett v. Telegraph*

*Co.*, 83 Iowa, 257 (49 N. W. Rep. 88). 3 Sutherland, Dam., 969.

III. The telegram required an answer, and McCloud was permitted to testify that when he called for this Monday, the agent told him the message had not been sent, and offered to return him the amount paid for its transmission. This was in explanation of why the answer had not been received, and was such information as the agent was authorized by his employment to impart. The telegram advised the company a reply was expected, and, when this was called for, if the agent knew none would come, it was his duty to so inform McCloud. It was a part of the same transaction, and not relating to past occurences. The information was of a character such as the company was bound to give through its agent in order to act in good faith with its patrons.

IV. Whether there was a contract for the sale of the horses, and the price agreed on, and whether the telegram was in fact given to an agent of the company in charge of the office at Magnolia, were properly submitted to the jury. It is sufficient to say that the evidence on each of these issues is conflicting. The other questions argued are disposed of by what has been said, or will not be likely to arise on another trial.—REVERSED.