'106  529
107  363
106  529
s114  416

## L. C. HENDERSHOT v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Telegram Delivery:**  NEGLIGENCE:  *Jury question.*  In an action against a telegraph company for damages for failure to promptly deliver a message, the evidence showed that the message reached its destination at eight o'clock A. M., and was delivered on the same day at one thirty P. M.; that the message was urgent; that the company's messenger made several attempts to find the addressee down town, and went to his office twice for that purpose but did not leave a notice under the door or visit his residence, which was within the company's free delivery limits, where the addressee was all the forenoon.  *Held*, sufficient to sustain a finding of negligence.

PROXIMATE DAMAGES:  *Jury question.*  A telegraph message reading "Bravo is sick; come and fetch Miller at once," was sent to plaintiff.  There was a delay of about five hours in its delivery. Bravo was a valuable horse of plaintiff, at a training stable about twelve miles from plaintiff's home.  Miller was a veterinary surgeon.  The evidence shows that the horse was taken sick about seven A. M.; that, if Miller had reached the horse about five or six hours earlier, his chances for recovery would have been greater; and that in all reasonable possibility the horse would have been saved, had it been treated five or six hours earlier.  *Held*, sufficient to sustain a finding that the delay in the delivery of the message was the proximate cause of the death of the horse.

DAMAGES:  *Proximateness.*  Damages sought against a telegraph company for the death of a valuable horse, alleged to be due to the defendant's delay in the delivery of a message are within the contemplation of the contract and not too remote where both the receiving and sending parties knew from the nature of the dispatch that promptness was required.

RULE APPLIED.  A telegraphic message reading "Bravo is sick; come and fetch Miller at once;" Bravo being a valuable horse of the addressee and Miller a veterinary surgeon, is sufficient notice to the company of the damages that might result from the failure to promptly deliver the message; especially when the receiving agent was asked to hurry.

**Evidence:** INSTRUCTIONS: *Issue.* In an action to recover damages for the death of a valuable horse alleged to have been due to the defendant's delay in delivering a telegram the burden of proof is on the plaintiff to show by a preponderance of the evidence that in all reasonable possibility the cause of the death of the horse was the failure to deliver the message in due time, and the sole issue is whether the death is attributable to delay in treatment caused by the failure to deliver the message. Hence, an instruction that negligence in the surgeon's treatment of the animal after the dispatch was received is imputable to the plaintiff, is erroneous. The only complaint is, that the surgeon did not visit the horse enough after reaching him. If this tends to account for the death, it is immaterial whether or not the failure to visit was negligence.

DEEMER, C. J.—Concurring specially.

PRIVILEGED COMMUNICATION: *Veterinaries.* Statements made by the owner of a horse to a veterinary surgeon called to treat the animal are not protected by Code, 1873, section 3643, prohibiting a disclosure of a professional communication, and their exclusion will be presumed to have been prejudicial when they might have had an important bearing on the cause of the horse's death, which was in issue.

*Appeal from Wapello District Court.*—HON. M. A. ROBERTS, Judge.

SATURDAY, OCTOBER 22, 1898.

ACTION at law to recover damages for delay in transmitting and delivering a telegram sent to the plaintiff. Verdict and judgment for the plaintiff for one thousand two hundred and thirty-four dollars and thirty-five cents. Defendant appeals.—*Reversed.*

*Geo. H. Fearsons* and *McNett & Tisdale* for appellant.

*W. W. Cory* and *Jacques & Jacques* for appellee.

GIVEN, J.—I. The following facts are undisputed, and a statement thereof will sufficiently show the issues: Plaintiff, for a long time a well-known resident and practicing attorney of Ottumwa, Iowa, was the owner of a valuable stallion and speed horse, called "Bravo." which he had in charge of one E. Daggett, for care and training, at the track and training stable at Hedrick, Iowa, about twelve miles distant from Ottumwa. On June 28, 1893,

at about 7 A. M., Daggett discovered that the horse was ailing, and at 7:30 o'clock A. M., delivered to the defendant's agent at Hedrick for transmission, with the request that it be promptly forwarded, a dispatch, as follows: "6-28, 1893. To C. Hendershot, Ottumwa, Iowa: Bravo is sick; come and fetch Miller at once. [Signed] E. Daggett. "The message was received by defendant's agent at Ottumwa between 8 and 8:30 the same morning, and was delivered to the plaintiff between 1 and 2 o'clock that afternoon. There being then no railway train by which Hedrick could be sooner reached, the plaintiff and Dr. Miller, a skillful and competent veterinary surgeon, proceeded by train to Hedrick, where they arrived between 3 and 4:30 o'clock that evening, when Dr. Miller found that the horse had pneumonia, or lung fever, and proceeded to treat it for that disease. The horse continued sick until the seventh day thereafter, when it died. There is dispute as to whether the defendant was negligent in not sooner delivering the dispatch to the plaintiff, whether the delay was the proximate cause of the death of the horse, whether plaintiff was negligent in the care of the horse, and as to its value. The facts as to these disputed questions will be noticed further on.

II. Appellant moved for a verdict at the close of the plaintiff's evidence, and again at the close of all the evidence, upon the grounds that the evidence failed to make out a case for the plaintiff, for that the damages claimed are too remote, for that it fails to show that the death of the horse was the proximate result of any act or omission of defendant, and for that there is not sufficient proof of negligence on the part of the defendant; also, that the evidence shows that plaintiff was guilty of contributory negligence. Appellant also included these grounds in its motion for a new trial, and, these several motions being overruled, the rulings are assigned as error. The state of the evidence was not so materially changed, following the first motion, as to require a separate consideration of these rulings. They may be considered under the general inquiry as to the sufficiency of the evidence.

III. We first inquire as to the sufficiency of the evidence to sustain the charge of negligence in failing to deliver the dispatch. The jury returned twenty-four special findings, of which the following is the substance of those relating to the alleged negligence. These findings, we think, are warranted by the evidence. The jury found that the message was delivered at Hedrick for transmission at 7:30 o'clock A. M.; that it was received at Ottumwa at 8 o'clock, and delivered to the plaintiff at 1:30 P. M.; that the messenger went to plaintiff's office twice,—the first time at about 8:15 A. M.; that he left no notice of the message under the door; and that there was a negligent delay of five hours in delivering the message. They also found that the plaintiff's residence was within a radius of one mile from defendant's Ottumwa office. One mile was the radius of free delivery. The defendant's agent at Ottumwa who received the dispatch says he knew Dr. Miller, and implied from the message that some one was sick and that a physician was wanted. While this message was not sent as an emergency message, there was surely reason to understand from its language that promptness should be exercised in its delivery. The messenger made several efforts to find Mr. Hendershott down town, but did not go to his residence, which the jury found was within the radius of free delivery. Plaintiff remained at his residence until after dinner that day, but, as his residence was within the limits of free delivery, the message should have been taken there,—especially so in view of what its words disclosed. There is a conflict in the evidence as to whether the residence was within a radius of one mile, but, if it was not, it was at most but a few feet beyond; and, in view of the character of the message, promptness, and good faith required that it should have been taken to the residence, even though it was a few feet beyond the limits of free delivery. We think, however, the finding of the jury as to the distance is warranted. We are in no doubt that the plaintiff's evidence in chief and the entire evidence were such as to warrant the court in submitting the issue of negligence to the jury, and to warrant the

jury in finding that the defendant was negligent in not sooner delivering the message to plaintiff.

IV.    Appellant contends that "the negligent delay, if any there was, in the delivery of the message, and the consequent failure of the veterinary surgeon to reach the horse as soon as he otherwise would, by the space of five hours, as found by the jury, was not the proximate cause of the death of the horse," and the law applied to the facts did not warrant the court in submitting to the jury the question whether the delay in the delivery of the message was the proximate cause of the death of the horse.    To determine these contentions, we must first ascertain the rule as to the degree of evidence which plaintiff must present to entitle him to recover.    The court instructed that, to recover, the plaintiff must establish that the defendant was negligent in not sooner delivering the message, that plaintiff was not guilty of negligence contributing to the death of the horse, and "that the death of the horse was directly and proximately caused by the delay in delivering the dispatch, or that but for such delay the horse would not, in all reasonable probability, have died." The instructions throughout direct the jury that the burden was on the plaintiff to prove that, "in all reasonable probability," the death of the horse was caused by reason of Dr. Miller's not reaching it as soon as he would had the message beeen delivered when it should have been, and that it did not rest upon the defendant to prove that the horse would have died even if Dr. Miller had reached it as much sooner as the delivery of the dispatch was delayed.    In *Kerr v. Waterworks Co.,* 95 Iowa, 514, this court quoted with approval from *Gores v. Graff,* 77 Wis. 174 (46 N. W. Rep. 48) (an action against a surgeon for negligence which caused the death of his patient), as follows:    "There can be no recovery, unless it is reasonably probably that Olson [the patient] would have lived had Dr. Graff treated him properly, and the existence of such reasonable probability must be proved; that is, facts and circumstances must be proved sufficiently to bring conviction to a reasonable mind, without resorting to mere conjecture or

uncertainty, and inconclusive inference or bare possibilities
that the surgeon's neglect of duty was the proximate cause of
the death of his patient." In *Taylor v. Telegraph Co.*, 95
Iowa, 744, wherein the question was whether the death of a
horse had been caused by exposure, it is said: "The evidence
as to the death of the animal from exposure on that night is
not as definite and certain as if the death had been caused by
accident or violent means, such as a collision of trains, or the
like, but we think it was a fair question for the jury." In the
nature of things, reasonable probability as to the cause of the
death of the horse is the most that can be proven in a case like
this; and, if the evidence discloses facts which show such
reasonable probability as convinces the jurors as to the cause
of death, they may surely act upon it, though, as they were
told, they must not indulge in conjecture, speculation, or
guesswork. Absolute certainty is not required to entitle a
party to recover, but only a preponderance of the evidence.
Holding the plaintiff to the burden of proving that in all
reasonable probability the cause of the death of the horse was
the failure to deliver the message in due time, we inquire
as to the sufficiency of the evidence to warrant the court in
submitting the issue to the jury, and in overruling the motion
for new trial.

V.    There is much evidence as to the nature of the
disease, the best time for its treatment, and the condition of
the horse from day to day during its sickness. This evidence
is so minute and lengthy that we will not do more than refer
to it in a general way. Dr. Miller states condition of the
horse at the time he saw it (June 28th) to be as follows:
"The horse had pneumonia, commonly called 'lung fever.'
He was breathing rapidly. His pulse was increased, his tem-
perature raised. His nostrils were somewhat dilated. His
mucous membranes were heightened in color, and he looked
depressed,—held his head lower than usual. He was breath-
ing about 18 per minute. Normal would be about 10 or 12
times a minute. His pulse was 64 to the minute; normal, 40,

though it varies with the change of temperature some. Temperature, 103½; normal, 100. The color of his nose is usually a pale red, while it became a brighter red. His breathing was shorter, quicker than natural, and more labored. His lungs were in a congested condition,—the right one,—while the left one was in also a congested condition, except the lower part of it, which had passed into what we call the 'second stage,'—consolidated stage. I would have to consider that the horse had passed into the second stage of the disease. When I got there I considered the horse to be in rather a critical condition." He further stated the fact that both lungs being involved added very greatly to the danger of the disease, and that there is much more mortality when both lungs are involved; that, if he had reached the horse five or six hours earlier, the chances of recovery would have been greater; that the best time to commence treatment is in the earlier stages of the disease; and that, when taken in its incipient stages, the per cent. of loss is one in ten to thirteen. The evidence of other experts and of standard authors tends to show that in all reasonable probability the life of the horse would have been saved had it been treated four or five hours sooner than it was. There is also evidence showing that the horse was first observed to be ailing about 7 o'clock in the morning, and continued to grow worse up to the time that Dr. Miller came, and that during the four hours he remained it did not seem to change for either better or worse. The jury found specially that the horse remained in the same condition up to July 3d, when it became worse. We will not discuss this evidence further, but content ourselves with saying that it discloses facts which tend to show that in all reasonable probability the life of the horse would have been saved, had Dr. Miller reached and treated it four hours sooner than he did. Appellant cites a number of cases in which it was held that there was no evidence or not sufficient evidence upon which to submit the question of probable cause to the jury. *Kerr v. Waterworks Co., supra,* is cited. In that case there was not a fact testified to showing that the death

resulted from the trip to the waterworks. There was nothing upon which to find for the plaintiffs, but conjecture and inconclusive inferences; but in this we have evidence of facts tending to show that treatment four or five hours earlier would, in all reasonable probability, have saved the horse. The same want of evidence is true of *Trapnell v. City of Red Oak Junction*, 76 Iowa, 745, also cited. In that case there was no evidence of facts which tended to prove that the diseased condition of plaintiff's breast was caused by the fall, and, on the contrary, the physicians testified, without conflict, that the disease was hereditary. There was no evidence in that case tending to connect the disease with the fall, and such connection was left merely to conjecture. *Telegraph Co. v. Swoveland*, 14 Ind. App. 341 (42 N. E. Rep. 1035), is also cited. In that opinion many cases are referred to. That action was to recover for defendant's negligent failure to put the plaintiff in communication with a veterinary surgeon whom he desired to consult and call to see a sick horse, and in consequence of which it was alleged the horse died. It was held that the value of the horse could not be considered as an element of damages, the question whether the horse would have been saved had the messenger taken the call at once being entirely a matter of speculation. The only evidence in that case was the opinion of the veterinary surgeon, who did not arrive until after the horse had died, which opinion was based upon supposed conditions. The court, after citing cases wherein there was a like failure of evidence to connect the effect with the cause, concluded as follows: "We do not wish to be understood as holding that cases may not arise in which, under similar circumstances, it would be proper to submit the question as to whether the death of the animal may be traced to the negligence of the company, but we do not think there is any proper evidence in this case upon which the jury could base a verdict for damages by reason of the death of the horse." The cases cited in that opinion and referred to by appellant were lacking in evidence tending to connect the alleged fact as a proximate cause of the negligence charged.

*Brown v. Telegraph Co.,* 6 Utah, 219 (21 Pac. Rep. 988), was an action to recover damages for failure to deliver a message saying: "Send doctor on first train. Katy has broken her finger." Because of a failure to deliver the dispatch a doctor was not sent, and on the next day plaintiff took Katy to a doctor by whom the finger was amputated. The contention was whether amputation was rendered necessary by the delay, and there being evidence to the effect that the broken part had become dead, and the circulation strangled so that the parts would not unite, the court held that it was a question for the jury. While we are of the opinion that courts should carefully guard against verdicts based upon mere conjecture, we think that under the evidence in this case there was no error in overruling the appellant's motions for a verdict, nor the motion for a new trial upon the grounds under consideration.

VI.   Appellant states as a further contention as follows: "Not only were the claimed damages too remote, but in view of the obscure language of the dispatch, were not within the contemplation of the parties, or within the contract involved in the dispatch." This refers to the damage claimed for the loss of the horse. *Hadley v. Baxendale,* 9 Exch. 341, cited and approved in *Manufacturing Co. v. Day,* 50 Iowa, 250, cited by appellant, states the rule as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally (*i. e.* according to the usual course of things) from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the

amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach." Defendant's agent at Hedrick, who received the dispatch for transmission, did not know Bravo, nor the persons named in the dispatch, but he did know, from the dispatch itself, that Bravo was sick; that Hendershott and Miller were wanted to come at once; and, as he expresses it, that it was a "hurry dispatch." He was also asked to send it promptly. Defendant's manager at Ottumwa did not know Bravo, nor whether Bravo was man or animal, but he says: "I knew Dr. Miller. I implied from the message some one was sick. When I saw it addressed to Hendershott, and it said, 'bring Miller,' it occurred to me that it meant 'send physician.'" With this knowledge of the special circumstances, surely these parties must have understood that it was their duty to make prompt delivery of the dispatch, to avoid injury to the sick Bravo. They must have foreseen from the dispatch itself that delay in delivering it might result in injury or death or both because of the sickness, and that the purpose of the dispatch was to avoid such consequences. The case is, we think, clearly within the rule above quoted. Appellant cites Telegraph Co. v. Kirkpatrick, 76 Tex. 217 (13 S. W. Rep. 70); Same v. Smith, 76 Tex. Sup. 253 (13 S. W. Rep. 169); and Same v. Bryant, 17 Ind. App. 70 (46 N. E. Rep. 358), where it was held that the damages claimed were too remote. The damages claimed in those cases were so different from that under consideration that the cases are not in point. Our conclusion finds support in Brown v. Telegraph Co., supra; Garrett v. Telegraph Co., 83 Iowa, 257; Herron v. Telegraph Co., 90 Iowa, 129; Mentzer v. Telegraph

*Co.,* 93 Iowa, 752; *Taylor v. Telegraph Co., supra;* and *Evans v. Telegraph Co.,* 102 Iowa, 219.

VII.   Appellant's next contention is that "plaintiff was guilty of contributory negligence in not seeing that the horse received more frequent attention during his sickness."   As we view the case, there is no question of negligence on the part of the plaintiff or the surgeon involved in this case.   The question is whether it is shown that in all reasonable probability the horse died because of the delay in being treated in consequence of the failure to deliver the dispatch in time. Any evidence tending to rebut the conclusion that the death resulted from that delay is certainly competent, regardless of whether or not negligence is shown.   The only complaint is that the surgeon failed to visit the horse as often as he should have done.   Now, if such failure tends to account for the death of the horse, it is immaterial whether or not the failure was negligence on the part of the surgeon or of the plaintiff. *Collins v. Council Bluffs,* 32 Iowa, 324, and *Rice v. City of Des Moines,* 40 Iowa, 638, are cited, but are not in point, as in those cases the question of negligence was involved. Counsel discuss, with numerous citations, the question whether the plaintiff is responsible for the failure of the surgeon to visit the horse with sufficient frequency, but we think that is immaterial, inasmuch as the failure bears with like force upon the question of the cause of the death, whether or not the failure was negligent.   The court instructed upon the theory that the question of contributory negligence was involved, and that "the negligence of Dr. Miller would, so far as the defendant is concerned, be the negligence of the plaintiff, and would have the same effect."   We think the court erred in so instructing, and that the inquiry should have been submitted simply as to the cause of death, regardless of negligence in the treatment of the horse after the dispatch was received.

VIII.   In the course of the cross-examination of Dr. Miller, and of his examination in chief on behalf of the defendant, he was asked what the plaintiff said as to the

doctor's visiting the horse, and the report that had been received from the keeper as to the condition of the horse. To these questions the plaintiff objected, as calling for privileged communications, and the objections were sustained as being in conflict with section 3643 of the Code of 1873, prohibiting a disclosure of professional communications. Plaintiff's counsel say in argument: "We have no case exactly in point to cite." We think that none can be found to sustain the ruling. The reasons upon which said section is based have no application whatever to a case like this. Communications are privileged in certain cases for the reason that full and free communication in those cases is necessary and to be encouraged, but these reasons do not apply to veterinary surgeons called to treat animals. The ruling must be presumed to have been prejudicial, as the evidence sought might have had an important bearing upon the cause of death.

Other questions are argued, but they are not such as are likely to arise upon a re-trial. Our conclusion is that for the errors pointed out the judgment of the district court must be REVERSED.

DEEMER, C. J. (Concurring.)—I agree to the conclusion, but do not wish to be bound by what is said in the seventh division of the opinion with reference to the instruction relating to contributory negligence.