By the Court—Bosworth, Ch. J.
Ho exception was taken to the charge except “to all that part of the charge in relation to the value of the property and damages.”
It is objected on this appeal that it was error to direct the Jury to find the value of the property. It is proper, in an action of this kind, that the Jury should assess the value of the property, though the plaintiff has obtained a delivery of it. (Code, 304, sub. 4.) The value of the property recovered affects the question of costs when the damages recovered do not amount to fifty dollars; and *398 even if it did not, and if the judgment should be for the damages assessed, and only that, the assessment of the value would be an idle ceremony," not prejudicial to either ■party. The judgment is not entered, and when entered (if the plaintiff succeeds on this appeal) it must be entered in proper form.
The verdict cannot be set aside as contrary to evidence. The Jury, in finding for the plaintiff, have merely credited positive testimony. It cannot be- said that they erred, because they believed it, or -have found without, or contrary to evidence.
There was no error in rejecting the testimony as to the uniform usage of other roads, as respects the delivery of baggage. The Jury were instructed that the rule adopted by this road on that subject was legal and valid; and whether all other roads had made and enforced the same rule was wholly immaterial.
There is no ground on which the defendants can succeed, unless it be that first stated as the basis of their motion for a nonsuit.
On the facts found by the Jury, a causé of action accrued to the plaintiff, on the refusal to deliver his baggage to him at Golden’s Bridge, and carrying it thence to Hew York. That cause of action has never been released or otherwise extinguished. It accrued on the 14th of August, 1860. The plaintiff testified, without objection, -that he commenced the action the next morning, and after he had placed the papers in the hands of the Sheriff’s officers for service, he went up town, found his trunks, outside the door, under the arch that goes into the depot, and sent Mr. Smith for an expressman, who took them to his house.
■ George J. Smith testifies that he went to the Sheriff’s office with Mr. Tracy, and awaited there until the papers were delivered to the Sheriff for replevying the baggage, and then went up with Mr. Tallmadge and Mr. Tracy to the station, about three-fourths of an hour after delivering process at the Sheriff’s' office.
There is no cross-examination to show what the plain *399 tiff had done before he found his trunks, which he testified amounted to commencing the action. Whether in his view of the fact which he affirmed, it included service of the summons or not, he was not asked to disclose. He swore that he found the trunks after he commenced the action, and there was no evidence offered to explain or contradict this testimony.
Chapter II, of title VU, of part H of the Code, having the statutory title: “ Claim and delivery of personal property,” authorizes a plaintiff in an action to recover possession of personal property, to “ claim the immediate delivery of such property, either at the -time of issuing summons, or at any time before answer, as provided in that chapter.”
We must infer from the evidence of the plaintiff and Mr. Smith, that all the papers were executed in due form, and delivered to the Sheriff, which were essential to perfect that claim, and impose on the Sheriff the duty to take the property and deliver it to the plaintiff.
This proceeding is declared to be a provisional remedy, (title VII,' part II of the Code,) and when all the papers requisite to perfect a plaintiff’s right to it, and have it enforced, are prepared and placed in the Sheriff’s hands, for the purpose of executing the remedy, it may be said that the provisional remedy is allowed.
And by § 139 of the Code, the Court is deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings, from the time of the service of the summons, or the allowance of a provisional remedy. (Burkhardt v. Sanford, 7 How. P. R., 329,)
It is by no means clear, therefore, that taking possession of the property a few hours, or a day before actual service of the summons, would be a bar to the action, the possession having been taken after the summons, and the papers making it the Sheriff’s duty to take and deliver the property of the plaintiff, had been placed in his hands to be executed.
However this may be, it is quite clear that a voluntary taking of the property after the service of the summons, *400 not from the defendant himself, but by picking it up where the plaintiff chanced to find it, does not extinguish his right of action, although it may affect the question of damages for the detention.
And the defendants are not in a condition, upon the testimony as it is presented to us, which enables them to say, that it is proved that the property was voluntarily reduced to possession by the plaintiff before the summons was served. The plaintiff, who must be presumed to know what is the commencement of a suit, testifies without objection, and without being asked to make further explanation, that he found and took his trunks, after he had commenced the action.
I think the order should be affirmed.
Barboub, J.
This action was brought by the plaintiff to recover the possession of his baggage claimed by him to be wrongfully withheld horn him by the defendants, and for damages sustained by the detention.
Upon the trial, evidence was given by the plaintiff sufficient and uncontradicted, to establish the following facts:
In August, 1860, the plaintiff, with his wife and two daughters, got on board the cars of the Western Railroad Company at Troy, with their baggage, with the intention of going to Golden’s Bridge, a station upon the Harlem railroad, between Albany and Hew Tork. Upon arriving at East Albany the plaintiff went to the car containing his trunks, and requested the man in charge to give him checks for them for Golden’s Bridge, and was informed by the baggage-master that checks could not be given to him for the reason that the office was not yet open. The baggage-master, however, told him that the trunks were all marked for Golden’s Bridge; that he could get tickets from the conductor upon the cars, and that checks would then be given to him. After the cars started he applied for tickets for Golden’s Bridge, to which the conductor replied, that he could not sell tickets for Golden’s Bridge, but added, “ I can do better for you; I have through tickets to *401 Yew York, and can sell yon a through ticket, which will answer the purpose just as well, and will not cost any more;” and at the same time told the plaintiff that the usual price of tickets was one dollar greater to Golden’s Bridge, thence to Yew York; and, therefore, the plaintiff took and paid for the four tickets for Yew York. It was shown that the roads of the two companies connected at Chatham, and that their custom was to sell tickets for passage over each other’s roads. On arriving at Chatham, the plaintiff again asked for checks, when the baggage-master, upon looking at"the tickets said, “ I cannot give you cheeks upon these tickets, but your baggage is marked all right; you will get it at Golden’s Bridge.” Shortly after leaving Chatham, the conductor of the 'Harlem road took the plaintiff’s tickets, and gave him conductors’ checks for them. The plaintiff afterwards told the conductor that he wished Ms baggage ready for delivery at the bridge, when he was told by the conductor that, inasmuch as his tickets were for Yew York, the trunks could not be given to him at Golden’s Bridge, unless he would pay two dollars extra; and although the plaintiff stated to him the circumstances attending the purchase of the tickets, and again demanded the trunks at Golden’s Bridge, the conductor persisted in his refusal to deliver, and carried them through to Yew York. The plaintiff followed in another train, and on the morning of the next day commenced this action. About noon of that day the plaintiff finding his trunks at the defendants’ depot in Yew York, took possession of them. Another witness states positively that it was between one and two o’clock when the baggage was recovered. .
After this evidence was given, the defendant moved to dismiss the complaint, upon the ground,
First. That a suit for the delivery of personal property, cannot be maintained when the goods have been received by the plaintiff before the service of process; and,
Secondly. Because the defendants had a right to establish the rule that baggage would be delivered only at the place to wMch tickets were purchased; that the plaintiff *402 was informed of this rule before reaching Golden’s Bridge, and could have received his baggage there, by paying the regular fare, which he refused to do.
The first of these objections was not well founded. Without considering the question as to whether actions of this character are not commenced by the issuing of the summons to the Sheriff, it is sufficient to say that no evidence had been given, tending to show that, when the property was received by the plaintiff, the summons had not been served; but, on the contrary, it had been proved by the testimony of the plaintiff, who is himself a lawyer, that the action was commenced in the morning, and the evidence showed that the trunks had been taken possession of by the plaintiff, after the morning had expired.
Hor can the second objection be sustained. It is true that the defendants had as perfect a right to establish the rule in question, as all corporations and individuals have to adopt such rules, not contrary to law, as they may deem fit and proper for their own government; but no rule in restriction of the rights acquired by passengers, under the contract to carry them which is to be implied from the purchase and sale of their tickets, or even from their taking seats in the cars of railroad companies, who are common carriers, can affect such rights, unless the other contracting party has notice of such rules, so that it may clearly be inferred that his contract is made subject thereto.
In this case, the rights of the plaintiff rest upon the contract which.is to be’ implied from the sale of the Hew York tickets to him, with the understanding, on the part of the conductor and himself, that such ticket should be good for a passage for him and his family, and, of course, their baggage, to Golden’s Bridge; and there was no evidence tending to show, at the time the motion was made; that the plaintiff had any knowledge of the rule.
The Judge ruled correctly in rejecting the testimony offered by the defendants touching the usage of other roads in respect to the delivery of the baggage, as it was *403 wholly irrelevant. Indeed, if admitted, it would only have tended to show that the rule of the defendant, in this regard, was proper; and the Judge, in his charge, went beyond that, and instructed the Jury that the rule was a reasonable and proper one. The defendants, therefore, were to no extent prejudiced by the exclusion of the evidence offered.
The verdict is fully sustained by the evidence, with the exception of that part of it which assesses the value of the property; which, as such property had been returned to the plaintiff before the trial, and was not claimed by the defendants, I consider erroneous.
The verdict is such a one as ought to and would have been rendered, if the property had not been returned to the plaintiff. As it now stands, the plaintiff is entitled to a judgment for 1,025 dollars, and it will be the duty of the clerk, unless other and further directions shall be given by the Court, to enter a judgment for that amount, and to tax and include therein costs accordingly. (Code, § 264.) This appears to me to be sufficient to show that the verdict ought not to be permitted to stand, without considering the question as to the power of a Judge to direct the entry of a judgment which does not conform in legal effect and intendment to the verdict, and the whole of it.
The Legislature, in providing by section 261 of the Code for the assessment of the value of the property, when the verdict is in favor of the plaintiff, and such property has not been delivered to him, have, by necessary implication, debarred an assessment where it has so been delivered. Expressio unius est exclusio alterius. (See also Code §§ 260, 262, 264, 277; Archer v. Boudinet, 1 Code Rep., N. S., 372; Rockwell v. Saunders, 19 Barb., 474; Woodburn v. Chamberlain, 17 Id., 446.
The provision in the 304th section, sub. 4, of the Code, it seems to me, is in strict accordance with the other sections above cited, and merely designates the persons by whom the value of the property is to be assessed, *404 in case an assessment shall be necessary under the 261st section.*
For these reasons I am of opinion that the verdict should be set aside, and a new trial granted, unless the plaintiff shall, within twenty days from the service .of the order to be entered herein, stipulated in writing that he will take a a judgment of twenty-five dollars (being the damages awarded) and the costs to which he will- be entitled; in which case judgment to be entered accordingly.
Ho costs should be awarded to either party upon this appeal.

 Since this opinion was written, I have examined the amendments to the Code adopted at the last session, and find my views still further confirmed, by the fact that the Legislature have deemed it necessary to provide for cases of this character in future, by an amendment to the 4th sub. of § 304.