WESTERN UNION TELEGRAPH COMPANY *v.* LOVE BANKS COMPANY.

Opinion delivered December 3, 1904.

1. TELEGRAPH COMPANY—REASONABLENESS OF RULES.—The reasonableness of a rule adopted by a telegraph company relative to the terms and hours of conducting its business at a certain office is for the court, and not for the jury.   (Page 208.)

2. SAME—QUESTIONS OF LAW AND FACT.—While it is proper, if there be a conflict in evidence as to whether any regulations have been established by a telegraph company, and if so what they are, to submit those questions to the jury, it is improper for the court to submit to the jury generally to determine what the regulations are, if any, and whether reasonable or not.   (Page 209.)

3. SAME—NEGLIGENCE IN FAILING TO DELIVER TELEGRAM.—Where plaintiff, having a commodity for sale, solicited prices from two dealers, and a telegraphic message of one of these in reply, offering the highest price, was, by the negligence of the telegraph company, not delivered until two days later when the price of the article had fallen, the company was responsible for its negligent failure whereby plaintiff was deprived of the opportunity of selling at the increased price offered in the message.   (Page 210.)

4. DAMAGES—MEASURE OF.—The measure of damages for the negligent failure of a telegraph company to deliver a message offering a price for a commodity held for sale is the difference between such price and the sum for which the commodity could have been sold for at the time the message should have been delivered.   (Page 210.)

Appeal from Woodruff Circuit Court.

HANCE N. HUTTON, Judge.

Reversed.

*Geo. H. Fearons, Rose, Hemingway & Rose* and *Roleson & Wood,* for appellant.

The court erred in leaving to the jury the question whether the office hours were reasonable. The company had the right to fix its own reasonable office hours. Crosw. Electr. § § 421, 422; 103 Ind. 505; 54 S. W. 563; *Id.* 829; 47 Atl. 881; 62 S. W. 136; 31 S. W. 211; 66 S. W. 17; 66 *Id.* 592; 25 *Id.* 760; 43 *Id.* 1053; 54 S. W. 827; 52 Ark. 406; 55 Ark. 138; 58 Ark. 334; 54 S. W. 963; 92 Am. Dec. 141. The court erred in its instructions to the jury as to measure of damages. 53 Pac. 252; 35 Pac. 75; 19 S. E. 67; 6 S. E. 813; 8 So. 746; 78 Me. 97; 2 Atl. 847; 2 W. Cond. (Tex.) § 113; 19 S. E. 366; 21 S. E. 212; 32 So. 310; 29 So. 787; 60 N. W. 677; 89 Ala. 587, s. c. 8 So. 132; 83 Ky. 104, s. c. 4 Am. St. 125; 51 N. Y. 668; 1 Tex. Civ. App. 1, s. c. 20 S. W. 725; 87 Wis. 297; s. c. 58 N. W. 391; 54 S. W. 825; 43 N. W. 959; 44 S. E. 309; 61 Ark. 613.

*P. R. Andrews,* for appellee.

This is a case where the rule that the reasonableness of office hours is a question of law, does not apply. Even if the office hours claimed by appellant were established, it was incumbent upon it to show that notice was brought home to appellee. 25 S. W. 439. The cases in 54 S. W. 964 and 61 S. W. 548 do not apply. The instruction of the court as to measure of damages was correct. 10 L. R. A. 515; 27 S. W. 760; 25 S. W. 871; 43 L. R. A. 214; 31 S. E. 275; 72 Pac. 499; 15 Tex. Civ. App. 547; 16 *Ib.* 52, 14 *Ib.* 565; 33 Ia. 214; 83 Ia. 257; 57 N. W. 696; 90 Ia. 129; 38 S. W. 1068.

McCULLOCH, J. The appellee, Love Banks Company, a mercantile corporation, sued appellant for damages resulting from negligent failure to deliver a message, and from a verdict and judgment in favor of plaintiff the defendant appealed.

The complaint alleges and the proof establishes the facts that appellee was operating a mercantile business at the village of Wiville, in Woodruff County, where appellant maintained a telegraph office, and during the afternoon of Saturday, October 13, 1900, having 70 bales of cotton on hand for sale, sent a telegraphic message to Ferrill & Co., at Palestine, Ark., asking for a bid on the cotton, and at the same time sent a similar message to J. L. Smith, a cotton buyer at Augusta, Ark. Smith replied immediately by wire, offering $.0925 per pound for the cotton, but no answer to the other message was received by appellee during the day. Ferrill & Co. filed with appellant's operator at Palestine at 4:35 p. m. on that day a reply to the message, offering $.0930 for the cotton, but the message was not delivered to appellee until 1 o'clock the following Monday afternoon. Appellee then wired Ferrill & Co. an acceptance of the offer, and Tuesday morning received reply dated Monday the 15th, "Can give but $.0880 today," and thereupon the cotton was sold for $.0850, making a difference of $301.32 on the 70 bales between the price offered by Ferrill & Co. and the price received on the sale.

Mr. Banks, the president and manager of appellee, and who conducted the negotiation, testified that the cotton was for sale, that he was seeking the highest offer, and would have sold at the price offered by Ferrill & Co. if the message had been delivered in time, and did in fact make acceptance as soon as it was received.

Kelley, the operator at Wiville, testified that he was also operator at Howell, a small station a few miles distant, and the rules of the company established for the management of the business provided for the Wiville office to be kept open for business from 12 o'clock noon until 4 p. m. daily, except Sunday, and at Howell from 8 o'clock a. m. until 12 o'clock noon, and from 4:30 until 6 p. m.; that the volume of telegraph business passing through the Wiville office did not amount to more than $1.50 to $2 per month, and did not justify keeping an operator there any greater portion of the time. He also testified that he received this message at 5:20 p. m. on the 13th at the Howell office, but did not deliver it that day for the reason that Mr. Banks did not live within the free delivery distance from Howell. Mr. Banks testified that no regular hours were kept by the

operator at Wiville, and that Kelley, the operator, remained at Wiville on the day in question until 6 p. m.

1.   The court instructed the jury of its own motion to the effect that "persons who deal with telegraph offices do so with regard to the rules and regulations of their offices relative to the terms and hours of business."

The defendant asked the court to give its instruction number 7, as follows: "7.   If the jury find from the testimony that the message was delivered for transmission at Palestine too late to be transmitted so as to reach Wiville during office hours at Wiville, then defendant would not be liable for delay in its transmission, if you further find that it used due diligence to deliver the message when office hours began at Wiville or through some other office."   The court refused to give said instruction as asked, but modified the same by adding thereto the words, "provided that the jury find that the office hours at Wiville were reasonable."

In thus submitting to the jury the question whether or not the regulation fixing office hours at Wiville were reasonable, instead of declaring as a matter of law whether the same was reasonable or unreasonable, the court erred.   This question is well settled by the decisions of this court.   *Railway* v. *Adcock*, 52 Ark. 406; *Railway Co.* v. *Hardy*, 55 Ark. 134; *Railway Co.* v. *Hammond*, 58 Ark. 324.   These decisions seem to be in line with the decided weight of authority: *Vedder* v. *Fellows*, 20 N. Y. 126; *Ill. Cent. R. Co.* v. *Whittemore*, 43 Ill. 420; *W. U. Tel. Co.* v. *Crider*, 54 S. W. 963; *Kansas & A. V. Railway Co.* v. *Dye*, 70 Fed. 27; *Little Rock & M. Railway Co.* v. *Barry*, 84 Fed. 944; *Louisville & N. Railway Co.* v. *Fleming*, 18 Am. & Eng. Ry. Cases, 347; *Tracy* v. *New York & Hudson Rd. Co.*, 9 Bosw. 396; *Hoffbauer* v. *D. & N. W. R. Co.*, 52 Iowa, 302; *Southern Fla. Ry. Co.* v. *Rhoads*, 5 So. 633.

The reasoning of Judge Sanborn in delivering the opinion of the court in *Little Rock & M. Railway Co.* v. *Barry, supra,* discussing this question, is, we think, unanswerable, and he says: "These questions must be determined by the court, because there is no other way in which a set of rules may ever be established or adjudicated as either reasonable or sufficient.   It may be said that trial judges often differ upon questions of this character.   But the answer to the objection is that the appellate

court will finally settle them, and in the end a substantial uniformity of decision as to the reasonableness and sufficiency of any set of rules in general use must eventually result, if these questions are left to the determination of the courts. If, on the other hand, they are remitted to the juries, their various findings can result in little less than confusion worse confounded. The decision of an appellate court becomes a precedent for the rulings of many inferior courts. But the finding of one jury is no precedent for the decision of another, and a rule that is found to be reasonable by ·one jury will frequently be thought to be unreasonable by another, and no criterion will ever be established by which railroad companies may measure their duties in this regard, if the reasonableness and sufficiency of their rules are to be daily submitted to new tribunals, which are governed by no precedent, and are without experience in the determination of these questions."

It might be urged that most of the authorities herein cited go to the question as to the reasonableness of a system of rules and regulations made by a railroad or like corporation intended for genral application in dealing with the public at large, where the necessity for uniformity of construction requires that it should be done by the court, rather than by the jury, in each case, and do not apply to the question of a local rule governing the dealings with a particular office. We do not think, however, that this difference alters the principle in anywise, or that the wisdom of having a construction of such rules by the court, rather than by the jury, is less manifest in the one class of cases than in the other. After all, in either case the question of the reasonableness of a rule, as applied to a given state of facts, is a conclusion of law to be drawn and declared by the court, and not a question of fact to be submitted to a jury for a finding thereon.

Where there is a conflict in the testimony, as appears to have been in the trial of this case below, whether any regulations have been established at all, or what they are if any have been established, are questions of fact to be submitted to the jury upon proper directions by the court declaring the reasonableness or unreasonableness of the regulations found by the jury to have been established. But it is improper for the court,

even when there is a dispute and conflict in the evidence concerning these matters, to submit them generally to the jury to determine the question as to what the regulations are, if any, and whether reasonable or unreasonable.

2. Counsel for appellant urge further that there should be no recovery in this case for the reason that the delayed telegram was merely a step in the negotiations for a contract, and not the completion of a contract, and that it therefore cannot be shown with sufficient certainty whether the offer would ever have been accepted, even if the telegram had been received. We cannot agree to that doctrine. The appellee had for sale a marketable article, for which he was seeking a purchaser at the best price obtainable, and we must assume that he would have accepted the highest price offered. At least, when the telegraph company undertook to transmit for him the message and answer concerning prices, he was entitled to the opportunity to act upon the information giving the highest market price, and the company should be held responsible for its negligent failure whereby he is deprived of the opportunity of selling at the increased price offered in the message.

The authorities fully sustain this view, and it is the only just and reasonable rule. *Garrett v. W. U. Tel Co.,* 83 Iowa, 257; *Herron v. W. U. Tel. Co.,* 90 Iowa, 129; *W. U. Tel. Co. v. Proctor,* 25 S. W. 811; *W. U. Tel. Co. v. Collins,* 10 L. R. A. 515; *McPeek v. W. U. Tel. Co.,* 43 L. R. A. 214; *W. U. Tel. Co. v. Carver,* 15 Tex. Civ. App. 547; *W. U. Tel. Co. v. Lindley,* 15 S. E. 676; *W. U. Tel. Co. v. Eubank,* 38 S. W. 1068.

We think, however, that the learned circuit judge erred in his instruction that the measure of damages is "the difference between the price offered in the message and the market value of the cotton at the time it was delivered." The proof showed that the plaintiff could have obtained $.0925 for the cotton if sold at the time that the message should have been delivered, and the difference between this price and the price contained in the delayed message is the correct measure of damages. The plaintiff could not augment the damage by waiting for the delivery of the message beyond the time that it should have been delivered; and when it failed to accept the highest obtainable price, it assumed the risk of a depreciation in the market price. The very reason upon which the plaintiff is allowed to recover

according to the increased price offered in the delayed message demands that he should only be allowed to recover the difference between that price and the next lowest obtainable price at that time, i. e., that he is seeking the highest market price for the purpose of making a sale, and is presumed to be willing to accept the highest price offered. He cannot be allowed to speculate upon his chances of recovery by waiting for the delayed message.

This rule might not apply where the article was one having no ready market value, as in that instance it would be necessary to sell, in order to establish the difference between the price offered and the price at which the article could be sold.

The Supreme Court of Iowa, in the case of *Herron* v. *W. U. Tel. Co., supra,* in discussing the question, says: "It is not true, as a general rule of law, that in such cases as this the plaintiff would be entitled to recover the difference betwen the price he would have received, had he been able to accept the offer, and the price he actually received; but it appears that the plaintiff in fact sold the horse for all which could have been realized for him with reasonable effort to receive the best price obtainable. * * * Where the loss results from the failure to sell property for which there is no market value, its actual value may be ascertained by means of the best evidence of which the case admits."

Reversed and remanded for a new trial.

HILL, C. J., dissents as to the question of measure of damages, holding that appellee had a right to wait the remainder of that day before being put to sale, which would make the measure of damages the difference between the price offered in the delayed message and the price obtainable on the following business day.