WESTERN UNION TELEGRAPH COMPANY v. GILLIS.

Opinion delivered March 15, 1909.

1. TELEGRAPH COMPANIES—DUTY TO DELIVER TELEGRAMS—INSTRUCTION.— Where a telegram received after 7 P. M. was not delivered until the next morning, and the telegraph company introduced evidence to prove a rule to the effect that the office hours of the company at the office in question were between 7 A. M. and 7 P. M., though there was testimony to the effect that such rule had been abrogated, it was error, in a suit for negligence in not delivering the telegram on the same day, to instruct the jury that "if a day message is received for transmission by defendant company, it then becomes their duty to transmit same as far as possible, even though it is unable to reach the destination before 7 P. M. of that day." (Page 485.)

2. APPEAL AND ERROR—HARMLESS ERROR.—The exclusion of certain testimony was harmless where the facts which they tended to establish were proved by other testimony. (Page 487.)

3. EVIDENCE—AFFIDAVITS.—*Ex parte* affidavits are admissible to contradict the affiant where he testifies in the case, but cannot be used as independent evidence. (Page 487.)

Appeal from Arkansas Circuit Court; *Eugene Lankford,* Judge; reversed.

### STATEMENT BY THE COURT.

This is an appeal by the Western Union Telegraph Company from a verdict and judgment against it in favor of Berta Gillis for damages resulting from an alleged negligent failure to deliver a message. On the 29th day of May, 1905, the following telegram was delivered to appellant for transmission:

"Fordyce, Ark., 5-29-05.

"Virda Gillis, De Witt, Ark.

"Mother very low; come at once.

"L. H. Gillis."

The testimony does not show at what time the message was delivered to the operator at Fordyce, but it is conceded that it reached the office at DeWitt between 7:30 and 8 o'clock P. M. of May 26th, and the testimony shows that it was intended for appellee. The office hours of the company at DeWitt, as established by its rules and regulations, were between 7 A. M. and 7 P. M., but the operator, who was also the railroad agent, while attending to that work, received the message at the time mentioned; but it was not delivered until the next morning between 9:30 and 10 o'clock. After receiving the message, appellee started at once to the bedside of her mother by the most practical route; but when she arrived there her mother was insane. In a few days her mother was committed to the State Hospital for Nervous Diseases, and died in a few days thereafter without regaining her normal condition. Other facts are stated in the opinion.

*George H. Fearons, Thomas, Lee & Smith,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. A telegraph company has the right to establish reasonable office hours for the transaction of its business, and in this case hours from seven A. M. to seven P. M. were reasonable. The court erred in instructing the jury that it was the appellant's duty to

deliver the message after office hours.  73 Ark. 205; 77 Ark. 534; 53 S. E. 985; 51 S. E. 117.

2. The order of commitment and attached affidavits were admissible as tending to show the information plaintiff had as to her mother's condition, the probability of her early death, and as proof that her insanity was of several months' standing. It tended also to show plaintiff's inattention to her mother, etc. They were copies of public records and admissible. Greenleaf on Ev. § § 483-4-5. The copies of the letters from the asylum to plaintiff and her father were admissible to show that she had received news of her mother's death and failed to respond, and as tending to show that she had suffered little mental anguish. The presumption is that it was received. Greenleaf on Ev. § 40.

*W. N. Carpenter* and *J. M. Brice,* for appellee.

1. The 4th instruction was based on uncontradicted testimony of a witness, an operator who had worked for appellant, who testified that, by the rules, if a day message was received after office hours, it was the duty of the operator to deliver the same promptly in the free delivery district . Appellee was known to the operator, and his failure to deliver the message until the next morning an hour after the train had left was clearly negligent.  77 Ark. 531; 73 Ark. 205.

2. The documentary evidence, to the exclusion of which appellant objects, was not material, nor relevant to the issue; they were not competent as original evidence, nor necessary for the purpose sought by appellant, because the contents were admitted and brought out from other witnesses.  4 Enc. of Ev. 816; 66 Ark. 229; 15 Ark. 29. If erroneously excluded, it was not prejudicial.  68 Ark. 611; 71 Ark. 434; 66 Ark. 600; 64 Ark. 238; 72 Ark. 158; 7 Ark. 470; 39 Ark. 340.

HART, J., (after stating the facts.) Counsel for appellant assigns as error the action of the court in giving the following instruction:

"4. The court instructs the jury that if a day message is received for transmission by defendant company, it then becomes their duty to transmit same as far as possible, even though it is unable to reach the destination before seven o'clock P. M. of that day, and, should such message be received at its destination

after seven o'clock P. M., it becomes the duty of said company to deliver such message within the limits of its free delivery district."

In the cases of *Western Union Tel. Co.* v. *Love-Banks Co.*, 73 Ark. 205, and *Western Union Tel. Co.* v. *Ford*, 77 Ark. 534, it was held that a telegraph company may establish reasonable office hours for the transmission and delivery of telegrams, and that the reasonableness of a rule adopted by it relative to the hours of conducting its business at a certain office is for the court, and not for the jury. The court so instructed the jury in this case; but it is insisted by counsel for appellee that, under the proof as developed in the case, the instruction in question was a proper one. They claim that the instruction, although peremptory in effect, is warranted by the testimony of Hugh Bowers, which, it is insisted, is uncontradicted. We cannot agree with their contention. The book of rules of the company shows that their hours for receiving and delivering messages at DeWitt was from 7 A. M. to 7 P. M. and that no night office was maintained there. It is conceded that the message in question was not received until between 7:30 and 8 o'clock P. M. Bowers testified that he formerly worked for the company, and that if a message was started as a day message and received by the operator at its destination after office hours, he should deliver it, and also that the operator, seeing that it was an important message, should have delivered it. The operator of appellant at DeWitt testified positively that there was no night office of the company at that place, and that under the rules of the company the hours for receiving and delivering messages were from 7 A. M. to 7 P. M. Thus it will be seen that there is a conflict between the evidence of the operator at DeWitt and that of Bowers. The jury might have inferred from the testimony of the former that the company owed no duty to deliver the message after 7 o'clock P. M.; and from the testimony of the latter the jury might have drawn the inference that the rule had been abrogated to the extent of requiring the company to deliver a message which was started as a day message and received at its destination after the hours prescribed by the rules of the company for transacting business. Therefore, there being a conflict in the testimony and one from which reasonable minds might draw different conclusions, the

court erred in declaring as a matter of law that, under the facts stated in the instructions, it became the duty of appellant to deliver the message.

2. It is also insisted by counsel for appellant that the court erred in refusing to permit the introduction in evidence of the order of commitment, the affidavits therewith and the copies of the letters mailed from the asylum to appellee and her father. The facts that Mrs. Myers became insane, that she was duly committed to the asylum in a few days after the telegram was sent, and died there in a few days thereafter, were established by the uncontroverted evidence in the case. The letters of Dr. Saner to appellee were read to the jury. Hence these alleged assignments of error pass out of the case. The affidavit of Dr. Matlock, which accompanied the order of commitment, was read to the jury for the purpose of contradicting Dr. Matlock, who was a witness in the case, and was competent for that purpose. The affidavit of Dr. Cheatham was properly refused to be introduced in evidence. He was not a witness in the case, and his *ex parte* affidavit could not be used as independent evidence. *Smith* v. *Feltz,* 42 Ark. 355.

3. Counsel for appellant insist that the court erred in permitting appellee to recover for mental anguish because it does not appear that, if the telegram had been promptly delivered, she could have reached her mother before she became irrational. The view we have already expressed will necessitate a new trial of the case, and on that account we do not deem it proper to discuss the evidence on this point, except to say that the evidence was sufficient to warrant the jury in finding that, had the message been promptly delivered, appellee could and would have reached her mother before she became irrational.

For the error in giving the 4th instruction as indicated in the opinion the judgment is reversed, and the cause remanded for a new trial.