## WESTERN UNION TELEGRAPH CO. v. LEWIS.

(Circuit Court of Appeals, Fifth Circuit. March 4, 1913. Rehearing Denied

April 12, 1913.)

No. 2,312.

1. TELEGRAPHS AND TELEPHONES (§ 67*)—SPECULATIVE DAMAGES—TELEGRAM
—FAILURE TO DELIVER.

Where defendant's failure to deliver a telegram containing an offer by
plaintiff to purchase a large tract of land probably resulted in plaintiff's
failure to get the land, which he intended to buy merely as a speculation
in the hope that he could sell it thereafter at an advance, the damages
sustained by him in failing to obtain it were purely speculative, and
therefore not recoverable against the telegraph company in an action for
its default.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§§ 64–68; Dec. Dig. § 67.*]

2. FAILURE TO DELIVER TELEGRAMS—MEASURE OF DAMAGES.

Where defendant telegraph company failed to deliver a telegram sent
by plaintiff, offering to purchase a tract of land for much less than it
was worth, which offer, had the message been delivered, would have been
accepted, the measure of plaintiff's damages was the difference between
the price offered and the value of the land. Per Shelby, Circuit Judge,
dissenting.

3. FAILURE TO DELIVER TELEGRAMS—SPECULATIVE DAMAGES.

Under the rule that a telegraph company is liable for damages which
are the natural and proximate result of its negligence in failing to sea-
sonably deliver a message received for transmission, such damages were
neither remote nor speculative. Per Shelby, Circuit Judge, dissenting.

4. REMOTE OR SPECULATIVE DAMAGES—RIGHT TO NOMINAL DAMAGES.

In an action against a telegraph company for nondelivery of a tele-
gram, by which plaintiff failed to obtain a favorable contract for the
purchase of real property, plaintiff was at least entitled to recover nom-
inal damages to the extent of the sum paid for the transmission of the
message, and hence it was not error to refuse to direct a verdict for de-
fendant on the ground that plaintiff's damages for loss of his contract
were remote or speculative. Per Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the North-
ern District of Texas; Edward R. Meek, Judge.

Action by W. J. Lewis against the Western Union Telegraph Com-
pany. From a judgment for plaintiff, defendant brings error. Re-
versed and remanded.

George H. Fearons, of New York City, John W. Veale, of Amaril-
lo, Tex., and M. A. Spoonts, George Thompson, and J. H. Barwise,
Jr., all of Ft. Worth, Tex., for plaintiff in error.

S. H. Madden, W. H. Kimbrough, and F. M. Ryburn, all of Ama-
rillo, Tex., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER,
District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

FOSTER, District Judge. In this case the facts appear to be as follows:

Sam Davidson was the owner of a tract of land in Hall and Don-nelly counties, Tex., known as the "Diamond Tail Pasture Lands," consisting of about 16,000 acres. About the beginning of 1906 David-son authorized J. F. Hall, of Amarillo, Tex., and other brokers, to sell the land at $3.25 an acre. Hall was unable to sell at this price. About the 1st of July, 1906, Davidson raised the price to $3.50 per acre, and Hall continued to try to sell it, but got no definite offers except from Lewis, defendant in error. On the 13th of November, 1906, Hall sent the following telegram from Amarillo to Davidson, at Ft. Worth, Tex., by the Western Union Telegraph Company:

"Lewis offers three dollars per acre, and also over this assumes debt to State, of about sixty-five hundred, for Diamond Tail Pasture. Will pay ten or fifteen thousand cash. Reply."

This offer amounted to about $3.25 per acre. The message was nev-er delivered to Davidson, and he shortly thereafter sold the property for $3.50 per acre. Lewis brought suit against the Western Union Telegraph Company in the district court of Potter county, Tex., to recover $32,000 as damages for the nondelivery of the telegram. The case was removed to the United States Circuit Court for the Northern District of Texas, and went to trial. At the close of the evidence the Telegraph Company moved the court to direct a verdict in its favor. The motion was overruled, and the case went to the jury, and resulted in a verdict against the defendant in the sum of $1,129. The over-ruling of the motion to direct is one of the errors assigned.

The defendant in error in his petition sets up that he was engaged generally in buying and selling range property for profit, including lands and cattle. His ad damnum is as follows:

"That said ranch and lands aggregated 16,000 acres, and would have cost plaintiff $54,500, while they would have been worth to him, and were and are of a reasonable market value, and of value for use to plaintiff in his business, of [$86,500], or $2 per acre more than said land would have cost him, making a difference of $32,000, in which said sum, with interest from said date, plaintiff has been damaged as the direct result of defendant's negli-gence and failure to perform its said contract and obligations."

Lewis, as a witness in his own behalf, testified as follows:

"My name is W. J. Lewis, and I live at Clarendon. I am in the cattle business, speculating a little, buying and selling land and cattle. I only buy and sell for myself. I have been engaged in this kind of business 15 or 20 years. * * * I was not able to purchase this property upon the offer I authorized Mr. Hall to make, but, if Mr. Davidson had accepted the offer, I was in a position to carry it out. * * * At the time I made this offer I was familiar with land values in that section of the country, being in that business and buying everything I thought was cheap. I think that the reasonable and fair cash market value of the land I made the offer for on the 13th of September, 1906, was $4.50 an acre. * * * As to the value of the land, the figures I have stated are what I thought I would have been able to get out of it. I was figuring on the matter as a speculative proposi-tion—that was my object in buying the land. I thought it was worth $4.50 an acre, and that is what I figured I would get as a speculative proposition. I didn't expect to buy on the 13th and sell on the 14th. A proposition like that would probably take a month to work out. I might have sold on the

basis·of some cash, some notes, and some trade. When figuring on a piece of property like this, I don't always expect to pay all cash or sell for all cash, but in this particular case I didn't think about the terms I would· sell on."

It appears from the above that Lewis intended to buy the land purely as a speculation, and it is not shown he had any particular purchaser in view. On the contrary, he expected to hold the land some time before finding a purchaser at a satisfactory price. He did not buy any other land in place of it, and nowhere in the pleadings or proof is there anything indicating that Lewis had any use for the property except to sell it, or that he was damaged in any other way by his failure to buy it than by the loss of the anticipated profits. He did not even pay for the telegram which was sent by Hall.

[1] Conceding, for the sake of argument, that Hall was acting as Lewis' agent, that the telegram charged the company with notice of that fact, and that Davidson would have accepted Lewis' offer, none of which is free from doubt, on the undisputed evidence there was nothing for the jury, as the anticipated profits were too uncertain and remote to form the basis of a claim for damages. Howard v. Stillwell & Bierce Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; Western Union Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479.

Entertaining these views, it is unnecessary to consider the other questions presented by the record.

The judgment is reversed, and the case remanded for a new trial.

SHELBY, Circuit Judge (dissenting). I find myself unable to concur in the decision that the trial court erred in refusing to direct a verdict for the defendant.

Lewis caused a telegram to be sent to Davidson offering $3.25 per acre for 16,000 acres of land. The telegraph company received the message, and received the customary fee, $1.13, for sending it, but never delivered the message. The evidence tended to show that Davidson would have accepted the offer if the message had been received. There was evidence tending to show that the land was fairly worth much more than the offer, and it was, in fact, proved that Davidson sold it a few days later for $3.50 per acre. The evidence was amply sufficient to sustain a finding by the jury that the negligence of the company caused Lewis to fail to secure the land at the price he offered. The charge of the trial court, which is copied in a note, correctly submitted the case to the jury, and it also shows substantially what the evidence tended to prove.

[2] If the land was fairly worth more to him than Lewis offered for it, and he lost the purchase by the failure to deliver the message, he was damaged to the extent of the difference between the price offered and the value of the land. There are cases that by analogy fully sustain this view. Reed v. Western Union Telegraph Co., 135 Mo. 661, 37 S. W. 904, 34 L. R. A. 492, 58 Am. St. Rep. 609; Wallingford & Son v. Western Union Telegraph Co., 53 S. C. 410, 31 S. E. 275; Western Union Telegraph Co. v. Love Banks Co., 73 Ark. 205, 83 S. W. 949, 3 Ann. Cas. 712; Western Union Telegraph Co. v. Cook, 54 Neb.

109, 74 N. W. 395; Box v. Postal Telegraph-Cable Co., 165 Fed. 138, 91 C. C. A. 172, 28 L. R. A. (N. S.) 566; 2 Joyce on Electric Law, § 961.

No decision of the Supreme Court has been found based on facts like those in this case.

A case has arisen in Mississippi exactly in point. An owner of real estate offered it for $3,000, and would have taken that sum for it. The plaintiff sent a telegram directing its purchase at that price, but the telegram was not duly delivered, and another bought the lot. The lot was worth $5,000. Plaintiff sued for $2,000, less $50, the cost of the transfer, which plaintiff would have paid. The court held the dec-. laration good, and approved the measure of damages sued for. The court condemned the proposition:

"That a man sustains no loss or injury cognizable by law when he is offered property for $3,000, worth $5,000 in the market, and which he is ready and anxious to buy, but is prevented from doing so, by negligence such as is disclosed in the record. * * *" Alexander v. Western Union Telegraph Co., 66 Miss. 161, 5 South. 397, 3 L. R. A. 71, 14 Am. St. Rep. 556; s. c., 67 Miss. 386, 7 South. 280.

[3] It cannot be doubted that a telegraph company is liable for damages that are the natural and proximate result of its negligence in failing to seasonably deliver a message it has received for transmission. Damages are a natural result when they are such as usually follow in the ordinary course of things, and they are proximate when they result directly, and not remotely, from the negligence. Such damages are supposed to be within the contemplation of the parties. The telegram, on its face, showed that it involved a business of importance, that it was an offer to purchase real estate at a price exceeding $15,000, and the use of the telegraph showed that promptness was important. It is true that remote or speculative damages, speculative in the sense that they are not reasonably certain, cannot be recovered. But when there was evidence that the land was worth greatly more than the amount offered for it, and that it, in fact, sold for more in a few days, can it be doubted that, if this evidence was true, it justified the jury in returning a verdict, as they did, for substantial damages?

In cases in which the special damages are remote, the plaintiff is entitled to nominal damages, at least to the extent of the sum paid for the transmission of the message. The charge directing the verdict could have been refused on that ground alone. Western Union Telegraph Co. v. Way, 83 Ala. 542, 557, 4 South. 844.

[4] The case of Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147, cited in the majority opinion, is not in conflict with the rulings of the trial judge. It is held there that anticipated profits from the running of a mill, which are uncertain, cannot be recovered; but it is also said in the same case that antici- .pated profits that are not open to the objection of uncertainty may be recovered.

The case of Western Union Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479, also cited in the court's opinion, involves the delay in delivering a message directing the purchase of 10,000 bar-

rels of oil at $1.17 per barrel on the plaintiff's account. The prices were higher the next day—$1.35 per barrel—and plaintiff sued for the difference in price. In deciding that the plaintiff could recover only the cost of sending the delayed message, the court called attention to the fact that there was nothing in the record to show that the oil would have been sold for the plaintiff's account the next day. If the telegram had directed the purchase and the sale on the rise, a different case would have been presented. But cases of the purchase of barrels of oil, bushels of wheat, or bales of cotton are not analogous in all respects to the purchase of land. The person offering to purchase barrels of oil on the market can, if his offer is delayed, always get the barrels of oil on the market, and his subsequent purchase will frequently fix the measure of his damages. One barrel of oil or one bushel of wheat on the market is just like another. Lewis could not have bought another 16,000 acres of land just like Davidson's ranch, and sued the company for the excess of price paid. His only way to prove his damages was to show how much more the land was worth than his offer, which the company negligently failed to deliver.

It would be something to be regretted if those engaged in business, and required to use the telegraph, had no remedy for the failure to deliver messages in such cases, except to recover the mere cost of the message.

I am constrained to dissent, believing that the judgment ought to be affirmed.

NOTE.—Meek, District Judge, charged the jury as follows:

"Gentlemen of the Jury: The plaintiff, W. J. Lewis, sues the defendant, Western Union Telegraph Company, to recover damages alleged to have been sustained by him because of the failure of the defendant to promptly transmit and deliver to the addressee a certain telegram filed with the defendant at its office in Amarillo, Tex., on the 13th day of September, 1906. It is alleged that on that day J. F. Hall, acting for and on behalf and at the instance of plaintiff, filed with the defendant at its office in Amarillo, Tex., a telegram addressed to Sam Davidson, at Ft. Worth, Tex., reading substantially as follows: 'Lewis offers three dollars per acre and also over this assumes debt to State of about sixty-five hundred, for Diamond Tail pasture; will pay ten or fifteen thousand cash. Reply.' It is also alleged that said Hall paid the charges made by the defendant for transmission and delivery of the message, and that it then and there became and was the duty of the defendant and its agents to transmit and deliver the message to said Davidson with due and reasonable diligence.

"It is further alleged that the defendant, through its agents and servants, failed to promptly transmit and deliver said telegram to Davidson, the addressee, and because thereof the plaintiff failed to secure said land under the proposal contained in said telegram, that had said telegram been promptly transmitted and received by Davidson he would have accepted said offer of the plaintiff, and that plaintiff would have secured the lands on these terms.

"He alleges that he has sustained damages in an amount equal to the difference between the price he would have paid for the lands under these terms and the then market value of same.

"The defendant, for answer, denies the allegations contained in plaintiff's petition, and for special and further answer, among other things, avers that even though it be true the above described message was not promptly delivered, yet, even if it had been so promptly delivered to the addressee, Davidson, and within the time alleged by the plaintiff in his petition to have

been a reasonable time, Davidson would not have accepted the price for said lands specified in said message, and there would not have been any trade made between said Lewis and the said Davidson.

"These, gentlemen, are the issues made in this case and upon which evidence has been admitted before you, and it is from such evidence and facts and circumstances in evidence that you are to reach your verdict, being guided and governed as to the law of the case by the charge of the court.

"In the first place, the burden of proof is on the plaintiff, and, before he can recover, he must establish the allegations contained in his petition by a preponderance or greater weight of the evidence, and, unless he has done so, you will find for the defendant.

"It is in evidence and uncontroverted that on the 13th day of September, 1906, J. F. Hall filed with the Western Union Telegraph Company, at its office in Amarillo, Tex., the message signed by him and addressed to Sam Davidson, at Ft. Worth, and which is in evidence before you. It is also in evidence and uncontroverted that said Hall paid the charges demanded by the company for the transmission of said message from Amarillo, to Ft. Worth, and that the company accepted the message and charges paid by Hall for such service.

"Now, if you believe from the evidence that this message was filed with said defendant company by Hall in compliance with instructions given him by the plaintiff, and if you find that in doing so he acted in whole or in part on behalf of the plaintiff, you are instructed that the defendant owed the plaintiff the duty to exercise ordinary care to transmit and deliver said message with reasonable dispatch to Sam Davidson in Ft. Worth. If you so believe, and if you further believe from the evidence that the defendant failed to exercise such ordinary care to transmit and deliver said message with reasonable dispatch and within a reasonable time, and if you further believe from the evidence that the plaintiff was injured thereby, and, as a result of the failure on the part of the defendant to exercise such ordinary care in the transmission and delivery of said message, then you will find for the plaintiff such damages, if any, as you may find him entitled to under the next succeeding paragraph of this charge.

"If you find from the evidence that at the time the message was filed in the defendant's office at Amarillo, Tex., the plaintiff had been negotiating with Sam Davidson for the purchase of a pasture known as the Diamond Tail pasture, and if you believe that if said message had been transmitted and delivered by the defendant with reasonable care that the said Sam Davidson would have accepted the offer contained in said message, and the purchase of said Diamond Tail pasture would have been consummated by the plaintiff, and, if you further believe that at the time said message was filed with the defendant, it was notified by the sender, J. F. Hall, that the same pertained to the closing of a land deal, and that the defendant had reasonable notice that, if it should fail to transmit and deliver such message with reasonable dispatch, such failure might result in the failure on the part of the plaintiff to consummate said land trade and in consequent loss to the plaintiff of profits, if any, flowing from such deal, then the measure of plaintiff's damages, if any you allow, will be the difference, if any, between the price he offered in said message to said Davidson for the property and the reasonable market value of same at said date with interest on such amount found at 6 per cent. per annum from September 13, 1906, until now, and in this connection you are further instructed that by the market value of the land mentioned in said message is meant the price which said lands would have brought if sold in due course of business either for cash or on such time and terms as were substantially equivalent to a cash transaction.

"If you believe from the facts and circumstances in evidence before you that Davidson, even though he had promptly received the telegram sent him by J. F. Hall, would not have thereupon accepted the offer made therein and wired an acceptance of it to the sender, Hall, then and in this event your verdict will be for the defendant.

"Again, if you believe from the evidence that the fair and reasonable cash market value of the land in question on September 13, 1906, was not more

than the price which Lewis offered, then and in that event you should find for the defendant.

"There are two main controverted issues of fact which are submitted to you for your determination under the evidence and facts and circumstances in evidence. The first issue is whether Davidson, had he promptly received the telegram containing the proposition, if the plaintiff, Lewis, would have accepted same. You have listened to much evidence on this issue. This issue involves what an individual would have done under a given condition. Davidson testified that he would have accepted the offer contained in the telegram. But this is not all the evidence on the point, nor is it necessarily controlling of the issue. You have before you in the testimony evidence of his movements and acts during the time these matters were pending. You have evidence as to what information, if any, he had from other sources concerning the proposition. You have the circumstances of his going to Amarillo, of the occasion for his going, the time of his going, and what he did on this trip and the time at which he did these things and the circumstances under which he did them. In determining this issue and arriving at the truth of the matter, you should take all these facts and circumstances into consideration."